## MONROE v. UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 98. Submitted January 14, 1902.—Decided March 10, 1902.

The approval of the Chief of Engineers was necessary to the legal consummation of the contract in this case.

A final reviewing and approving judgment was given to the Chief of Engineers, by a covenant so expressed as to constitute a condition precedent to the taking effect of the contract.

The contract was not approved, and the legal consequence of that cannot be escaped.

THE appellants brought suit against the United States in the Court of Claims for the sum of $25,485.89, for expenses incurred and for damages. The latter consisted of losses suffered by them by the breach of a contract entered into by the United States through W. S. Marshall, Captain in the Corps of Engineers. The contract was made in pursuance of an advertisement made by the United States, inviting proposals for constructing a canal to be known as the Illinois and Mississippi Canal, upon the terms, conditions and specifications set forth in an exhibit which was attached to and made a part of the petition.

The contract contained the following clause: "This contract shall be subject to approval of the Chief of Engineers, United States Army." There was no averment that the contract had been so approved, and the United States demurred. The demurrer stated: "Not only does the contract itself, a copy of which is attached as above, fail to show that the same was ever approved by the Chief of Engineers, U. S. A., but the testimony in the

case fully and conclusively shows, and the same is not denied by the claimant, that said contract has never been approved by the said Chief of Engineers, U. S. A., in any manner whatsoever."

It was prayed that the petition " be quashed and the action be dismissed accordingly."

The action of the court is expressed in the following order : " Allowed in part and judgment for defendants on findings of fact filed."

As a conclusion of law from the findings the court ordered the petition dismissed and a formal judgment was entered accordingly.  35 Court of Claims Rep. 199.  This appeal was then taken.

The findings of fact are as follows :

On or about the 25th of May, 1892, the United States through W. S. Marshall, a Captain in its Corps of Engineers, advertised for proposals for constructing a canal to be known as the Illinois and Mississippi Canal.  The claimants submitted a bid to do certain parts of the work.  The bid was accepted by Captain Marshall, acting under an authority contained in a letter from the Chief of Engineers of the United States Army.

" On the 20th day of July, 1892, Captain Marshall forwarded to claimants the formal contract, annexed to and forming part of the petition, and bonds to be executed within ten days thereafter, all which claimants fully executed and returned to the said engineer on the 28th day of July, 1892, which formal contract was duly signed by Captain Marshall.  The form of the contract had been prepared by the Chief of Engineers and forwarded to Captain Marshall for use in such cases.

"Immediately upon receiving notice of the acceptance of their said bid claimants began preparation for the commencement of said work.  They shipped their plant from Portsmouth, Ohio, to Rock Island, Ill. ; rented and furnished a boat and had the same taken to Rock River, in the vicinity of the work, to be used as a boarding house for men employed on the work ; built stables for their teams ; hired men and teams ; purchased a large amount of plant, consisting of shovels, plows, scrapers and the like, and generally equipped themselves in a proper

manner to expeditiously perform the work, and commenced the work with men and teams about the 1st day of August, 1892.

"On the 6th day of August, 1892, without fault on their part and while the work was progressing, claimants were stopped by the United States and their contract abrogated against their consent, and the work that they had contracted to do readvertised, for the alleged reason that by the act of August 1, 1892, no work could be prosecuted by the United States without a stipulation in the contract binding the contractor not to permit his workmen to labor more than eight hours per day, and the United States refused to permit claimants to continue the work either under the terms of the contract or under the terms of the law of August 1, 1892, but immediately, and against the protest of claimants, readvertised and let the said work to other parties.

"In the prosecution of said work under said contract, prior to the abrogation thereof on August 6, 1892, claimants expended the sum of $678.21, which has not been paid to them.

"By reason of the abrogation of said contract claimants lost the following sums expended and were deprived of the following profits which they would have made in the execution of said work :

"Expenses incurred.........................$ 678 21
"Profits if they had been permitted to perform...7150 00"

*Mr. John C. Fay* for appellants.

*Mr. Assistant Attorney General Pradt* and *Mr. Franklin W. Collins* for appellees.

MR. JUSTICE MCKENNA delivered the opinion of the court.

We agree with counsel that the question in the case is a narrow one. It is not denied that the approval of the Chief of Engineers was necessary to the legal consummation of the contract. It is, however, insisted that the approval was not required to be formally expressed, but could and did consist of

acts preceding the written instrument, though the latter contained the terms and covenants of the parties. In other words, it is contended that the advertisement, claimants' bid made under competition, which was submitted to the Chief of Engineers, who, after some correspondence with the engineer in Chicago in relation thereto, had in writing directed it to be accepted, the preparation of the formal contract on a blank furnished by the Chief of Engineers, its execution by both the officer in charge and the claimants, in due form and in strict accordance with the provision of section 3744 of the Revised Statutes, constituted an approval.

We are unable to assent to this view. It is the final written instrument that the statute contemplates shall be executed and signed by the parties, and which shall contain and be the proof of their obligations and rights. And it was such written instrument that was to be approved by the Chief of Engineers. The approval was to be a future act. The provision of the contract was: "This contract" (that is, the instrument to which the contracting officer and the claimants attached their signatures and seals) "shall be subject to approval of the Chief of Engineers of the United States Army." The approval, therefore, did not consist of something precedent, but was to consist of something subsequent. That which preceded was inducement only, and contemplated an instrument of binding and remedial form, and hence to contain covenants imposing obligations and giving rights and remedies, containing provisions for the time of performance and the manner of it; provisions for changes and for extra work—indeed, of the provisons which prudence and necessity require and those which the statutes of the United States might require. And the final right to see that this was done, the parties agreed, should be devolved on the Chief of Engineers, and it was not satisfied by prior instructions. In other words, a final reviewing and approving judgment was given to the Chief of Engineers, and was given by a covenant so expressed as to constitute a condition precedent to the taking effect of the contract. If the covenant did not mean that, it was idle. Construed as prospective, it had a natural purpose. The engagement of the parties

did not end with the bid and its acceptance. The performance of the work was to be secured, and the final judgment of what was necessary for that, as we have already said, was to be given by the Chief of Engineers.

The case of *United States* v. *Speed,* 8 Wall. 78, cited by appellants, is not apposite. In that case the facts were that the Secretary of War, through the Commissary General, "authorized Major Simonds, at Louisville, in October, 1864, and during the late rebellion, to buy hogs and enter into contracts for slaughtering and packing them to furnish pork for the army. On the 27th of October, Simonds, for the United States, and Speed, made a contract by which the live hogs, the cooperage, salt and other necessary materials, were to be delivered to Speed by the United States, and he was to do the work of slaughtering and packing. The contract was agreed to be subject to the approval of the Commissary General of Subsistence. No advertisements for bids or proposals were put out before making the contract, nor did the contract contain a provision that it should terminate at such times as the Commissary General of Subsistence should direct. After the contract was made, Simonds wrote—as the facts were found under the rules, by the Court of Claims, to be—to the Commissary General, informing him substantially of its terms; but no copy of it nor the contract itself was presented to the Commissary General for formal approval. The Commissary General thereupon wrote to Simonds, expressing his satisfaction at the progress made, and adding: 'The whole subject of porkpacking at Louisville is placed subject to your direction under the advice of Colonel Kilburn.'"

After reciting those facts this court said by Mr. Justice Miller: "We are of the opinion that, taking all this together, it is a finding by the court as a question of fact that the contract was approved by that officer; and inasmuch as neither the instrument itself nor any rule of law prescribes the mode in which this approval shall be evidenced, that a jury would have been justified in finding as the court did."

In *United States* v. *Speed,* therefore, the acts which were held to constitute an approval of the contract relied upon were

subsequent to the contract, and referred to it. In the case at bar it is stated in the opinion of the Court of Claims that after the contract was signed it was mailed " to the Chief of Engineers in Washington for his approval," and that " it was immediately disapproved and returned to the officer (engineer in charge at Chicago) with instructions to readvertise the work."

The declaration, in the opinion of the Court of Claims, that the contract was disapproved, is asserted to be incorrect by claimants, and the findings are quoted to show that the contract was abrogated, not disapproved. That is undoubtedly the expression of the finding, but its meaning is manifest. An order to the officer in charge to abrogate the contract was certainly a very definite and unmistakable disapproval of it. At any rate, there was no approval of it, and that was a necessary condition to its final effect and obligation.

It is further urged that the terms of the contract were not disapproved, and that the action of the Chief of Engineers was " for the alleged reason that by the act of August 1, 1892, no work could be prosecuted by the United States without a stipulation in the contract binding the contractor not to permit his workmen to labor more than eight hours per day." It may be assumed that the Chief of Engineers considered that the contract took effect by his approval, and that if he approved it he would incur the penalties of the statute. But however that may be, the reasons for his action is not open to our inquiry. The contract was not approved, and how can the legal consequence of that be escaped? We could not have compelled the approval of the contract, and we cannot treat it as approved and adjudge rights as upon the performance of a condition which was not performed.

This case has some features of hardship. They are, however, explained and somewhat lessened by the facts stated in the opinion of the Court of Appeals. It is there stated :

"The contract bears date the 19th July, 1892. It provides in terms that the contractors 'shall commence work on or before the 1st day of August, 1892,' but it appears by evidence *aliunde* that the instrument was not mailed to the contractors for signature until the 20th July, 1892; that it was returned for cor-

rections; that it was not finally mailed for signature until the 27th of July, 1892, and that it was not signed by the contractors until some day between the 27th of July and the 1st of August, 1892. On the faith of the agreement executed by the contracting officer, but without his knowledge or direction, the contractors proceeded to make ready for their work and, indeed, performed, to some extent, incurring thereby a loss of $678.21."

And further, that "the work was done without the knowledge or direction of the officer in charge, and no benefit resulted thereby to the defendants" (United States).

*Judgment affirmed.*