Booth, J.,
delivered the opinion of the court:
This is a motion for a new trial. The claimant entered into two written agreements with Capt. C. McD. Townsend of the Engineer Corps of the Army to furnish certain quan *414 tities of brush. The agreements were both dated April 29, 1899, and called for the delivery of brush in Wisconsin and Minnesota. The Wisconsin agreement was fully executed. The Minnesota agreement called for the delivery of brush between St. Paul, Minn., and head of Lake Pepin. Subsequent to the execution of the Minnesota agreement claimant became ill and unable to perform the same; he notified Capt. Townsend to this effect, and, as the findings show, deplored the situation but accepted the results. On July 10, 1899, claimant having recovered his health, and realizing the consequence incident to the forfeiture of his contract, personally appealed to Capt. Townsend to be relieved as far as possible from a situation due in no part to willful neglect or other circumstances over which he had control. Capt. Townsend acceded in part to claimant’s wishes, and, desiring to extend all the relief possible in the premises, notified the officer in charge of the work in the Minnesota district to receive such brush as he might deliver under his contract. Capt. Du Shane, the officer in charge of the Minnesota work, misconstrued the instructions of his superior, Capt. Townsend, and, contrary to the express terms of claimant’s contract, notified claimant to deliver brush, which would be received either above Lake Pepin now or below Lake Pepin when the work progressed that far. Claimant delivered some brush below Lake Pepin, which was received and paid for; but did not deliver or offer to deliver any above Lake Pepin, as his contract provided, until after notice of its forfeiture. The claimant was not in ignorance of the meaning of his contract nor deceived by the delivery and acceptance of brush below Lake Pepin. In his interview with Capt. Townsend (as he testifies and as the findings show) he was generously allowed to proceed with the execution of his Minnesota contract, notwithstanding prior proposal for brush to supply the amount he had contracted to deliver. Twelve days after the notice of his failure to keep his promises of July 10, 1899, he contented himself with a notice of willingness to proceed with the delivery of brush below Lake Pepin at a price 6 cents less than it had been possible for the Government to secure its delivery above Lake Pepin as his contract provided, and it was not until September 1,1899, that he complained of being *415 misled by Capt-. Du Shane’s misconstruction of Capt. Townsend’s instructions.
The equity of the case does not rest with the claimant; he was in no Avise misled or mistreated. The case of Jones v. United States (96 U. S., 24) is somewhat similar to the present controversy. In that case the court said: “ Viewed in that light, it is clear that the United States did not do anything to warrant the contractor in changing his position, and, if not, then it is settled law that the principle of estoppel does not apply.” In the Jones case, as in this, the contractor was overcome by accidents over which he had no control — - in the Jones case by fire destroying the mills engaged in the manufacture of the cloth he contracted to deliver, and in this case by illness. The officers in charge of the work under both contracts evinced a most commendable disposition to grant indulgences to the very limit of their authority under the contract, but they could not and did not go further. The findings show that Capt. Townsend was willing to accept brush under the Minnesota contract as long as it was possible to do so, and then assured the contractor that he would make favorable recommendations in his behalf. The engineer officer recognized the limits of his authority under the law and did not exceed them.
The contract in this case is governed by section 3144,. Revised Statutes, which expressly requires written ágree-ments. The contract also required a written agreement and the approval of the Secretary of War to any change or modification of the same which would involve a departure from the “ specifications as to character and quantity, whether of labor or material, as would either increase or diminish the cost of the work.”
In Monroe v. United States (184 U. S., 524) the approval of a superior officer to a contract was held to be a condition precedent to its validity. In this case to depart from legal precedent would be equivalent to holding that an officer in, charge of Government work under a written contract as prescribed by statute might change and vary its terms and, conditions at his pleasure.
The motion for a new trial is overruled.