Hurlbut, J.,
rendered the opinion of the court.
Action upon a bond, begun August 12,1911, by plaintiff in error (plaintiff below), against defendants (hereinafter referred to as plaintiff and defendants, as they appear in the original complaint).
At the close of plaintiff’s evidence it was non-suited, upon motion of defendants. Motion for new trial was overrulde and judgment entered in favor of defendants, plaintiff bringing the case here for review.
It appears from the pleadings and proof that on June 25, 1904, defendant Vickery entered into a contract with the surveyor general of the United States for Colorado (acting on behalf of the government), to resurvey, mark and establish certain boundary lines of specified townships located in Colorado, and subdivisional section lines within all or part of such townships; that simultaneously with the execution and delivery of said contract,' said Vickery as principal and plaintiff as surety, executed and delivered their joint and several bond in the sum of $10,000 to the United States to secure the faithful performance of such contract on behalf of Vickery; that at the time of, or just prior to, the execution and delivery of the bond aforesaid, defendants Albion K. Vickery, Peter O’Brian and Nelson Rhoades, Jr., executed and delivered to plaintiff their joint and several bond in the penal sum of $10,000 to indemnify plaintiff for any damage it might suffer from executing the first mentioned bond to the government, and from the failure or neglect of defendant Vickery to faithfully perform the conditions of the contract first mentioned; that, upon faith of said bond from Vickery, O’Brian and Rhoades, to itself, plaintiff," executed and delivered its bond to the government as already stated; that Vickery attempted to make the surveys in accordance with the terms of his said contract, and submitted the result thereof to the government for approval; that the government, on September 20, 1906, *99 rejected such surveys in toto, but gave him a reasonable opportunity to return to the field and correct and complete his surveys, which Vickery failed or refused to do; that, after such failure or refusal, and on February 23, 1907, the government, at the request of plaintiff,. entered into a contract with one Arthur D. Kidder to. make the same surveys and perform the same work that was required under the terms of the Vickery contract, which surveys were completed by Kidder and approved by the government, and payment made to him' of $6,043.95, which amount Kidder turned over to plaintiff; that, in order to save itself and said Vickery from greater loss under its bond, plaintiff employed said Kidder to make the surveys for the government, which he did make as aforesaid, and paid him therefor a reasonable sum, to-wit, $9,000, and in so doing suffered damage to the amount of $3,352.15, which sum represented the difference between the amount paid by plaintiff to Kidder and that paid by the government to him under its contract with him.
Two serious contentions are urged by defendants to sustain the judgment of non-suit: first, that the Vicke™” contract with the government specifically provided that he should have no power or authority to commence the surveys under the contract until he should be officially notified by the surveyor general of the approval thereof by the commissioner of the land office, and that no such notice had been received by him up to the time the answer was filed; hence, they claim, no right of action accrued to the government against Vickery upon his contract, or against himself or his principal upon their bond, and, such being the case, as they say, no right of action accrued to plaintiff upon the bond which is the basis of this action; second, that in harmony with the terms of the Vickery contract the commissioner of the land office and said surveyor general issued written instructions to Vickery to the effect that one Clark, a deputy surveyor, then had a contract with the government to *100 establish the twelfth guide meridian west, and a certain base line, from and upon which the lines of the surveys to be made by Vickery were to be initiated and closed, and that Jbe (Vickery) must not commence his surveys under his contract until such base line and guide meridian should be established by said Clark; that Clark did not complete such surveys until after the time limit in the Vickery contract had expired, for which reason, it is said, it was impossible for Vickery to make the surveys in accordance with his contract, thereby relieving him of any liability thereunder or under,his bond.
There is no merit in the first contention. It appears from the record that on September 26, 1912, plaintiff was permitted by the court to amend its complaint by inserting therein a paragraph to the effect that on or about September 2, 1904, the commissioner of the land office duly approved the said Vickery contract and bond, official notice of which was thereupon given by the surveyor general to Vickery. In support of this allegation a letter was introduced in evidence, dated September 2, 1902, written by the surveyor general to Vickery, containing instructions, and specifically informing the latter that his contract and bond, No. 834, dated June 23, 1904, had been approved by the general land office. This information came to Vickery a little over two months after the date of his contract, and his testimony shows that he began his surveys a few days thereafter, on September 14, 1904. This evidence being undisputed, disposes of defendants’ first contention adversely to them. Even if Vickery had not received such notice, the fact that he began his surveys under his contract, on September 14, 1904, and prosecuted the same to completion in February, 1905, was a waiver of his right to insist upon such formal notice of approval. -
As to the second contention, it is admitted by plaintiff in its pleadings that Vickery was instructed not to begin his surveys until after Clark had sufficiently established the *101 base-line and guide meridian to warrant him in beginning his surveys; but, in connection with such admission, it is pleaded that under the provisions of the special instructions of the commissioner to, Vickery on August 4,1904, the latter was informed that if he should find it impossible to complete his surveys and make proper returns thereof before the time required by his contract, he and plaintiff should make application to the surveyor general for an extension of time on said contract. The record shows that, although prior to June 21, 1906, the surveyor general had at divers times requested Vickery,- both by letter and personally, to make application for an extension of time in which to complete his surveys under his contract, he made no such application. It also shows that on August 6, 1906, the surveyor general wrote a letter to Vickery, requesting him to return to the field and correct and complete his surveys in accordance with the provisions of the contract and the special instructions of August 4', 1904, allowing him thirty days from the date of the letter in which to signify his intentions as to whether or not he would do so, and warning him that in case he failed to so express his intentions his surveys would be subject to rejection by the government. Vickery ignored the letter. It is evident from the foregoing that the government did not enforce, and did not intend to enforce, the time limit expressed in the contract, namely, May 1, 1905, but, on the contrary, waived such requirement, and offered, even at that late date (August 6, 1906), to permit him to return to the field and correct and complete his surveys if he so desired. It is manifest from such action on behalf of the government that, notwithstanding such time limit, it gave Vickery every opportunity and encouragement to complete and finish his surveys in accordance with his contract; but Vickery declined to take advantage of such opportunity. It is undisputed that Clark’s survey of the base-line and guide meridian was completed about Mpy 17, 1905, and that Vickery started to make his surveys September 14, 1904, *102 after receiving a letter from the surveyor general, dated September 2, 1904, containing the information that if he should then begin work under his contract and close on Clark’s base and meridian lines, he would be doing so at his own risk. .The evidence further shows the important fact that the initial and closing points or monuments, the base and guide lines and alignments, which Vickery used in establishing his surveys, were, with some slight exceptions, the same as those úsed by Kidder in making his surveys (the latter surveys being accepted by the government without criticism). This indicates that, although Vickery began his surveys before Clark had completed his work, at his own risk, the same must have been correct so far as the initial and closing points adopted by him were concerned, hence he could not have been damaged by assuming the risk and beginning his surveys when he did, and before Clark had completed his contract. •
Defendants further contend with zeal that plaintiff failed to prove (as pleaded in its complaint), that it undertook to, and did, by and through its agent and representative, Kidder, finish and complete the surveys in substantia] compliance with the terms and conditions of the Vickery contract; but they say the evidence conclusively showed such surveys were made, not by plaintiff or his representatives, but by Kidder in his own right, undér a contract executed between him and the government; therefore they urge that the proof in fact established their second defense. We do not agree with this contention. Plaintiff, in its reply to defendants’ second defense, admits the execution of the contract therein referred to, but follows such admission with an allegation that under the rules and regulations of the land office, a compassman may not complete the surveys of his principal, when the same have been rejected by the surveyor general; but in such case the principal is permitted to designate a competent surveyor, acceptable to the surveyor general and the land office, with whom a new contract *103 for the same surveys may be entered into, accompanied by a new bond executed by the same bondsmen' and sureties; that, after the rejection of Vickery’s surveys, and in pursuance of such rules and regulations, plaintiff employed and designated said Kidder as such competent surveyor, to make the new surveys, who thereupon entered into the contract mentioned. The rules and regulations were part of the Vickery contract, and binding upon him, and if plaintiff desired to exercise the right therein reserved to it, and have another survey made in accordance with the terms of the Vickery contract, after the rejection of the latter’s surveys, it pursued the only course left open to it to do so. Plaintiff’s selection of Kidder for that purpose was acceptable to the land office and surveyor general, and thereupon the government, at plaintiff’s request, entered into the contract with Kidder. The special instructions to Kidder, dated February 23, 1907, contained a recital that the government executed the contract to him at the request of plaintiff. It is evident from the ■ provisions of the Vickery contract and special regulations accompanying the same, that plaintiff itself was prohibited from entering into a contract directly with the government to make another survey in accordance with the terms and conditions of that contract after the surveys thereunder had been rejected by the government. Kidder having been employed and appointed by plaintiff to make the new surveys, and the government having recognized and acted upon such employment and appointment, it is clear that Kidder’s status, as a party to the contract, was only that of a representative or agent of plaintiff.
We have carefully read the case of Monroe v. United States, 184 U. S. 524, 46 L. Ed. 670, 22 Sup. Ct. 444, cited by defendant’s counsel in support of their contention that Vickery’s contract of June 25, 1904, was not a completed contract between him and the government, but do not think it is in point as to any issue appearing in this record. The important distinction between that case and the one at bar *104 is that in the former, by a special proviso in the instrument, it was not to be deemed a contract or binding upon the parties until approved by the chief of engineers of the United States Army (such approval being withheld) ; while in the latter it is shown beyond controversy that -the contract of June 25, 1904, between Vickery and the government, was fully consummated on September 2, 1904. In the Monroe cáse the contractor claimed the right to recover for work done before approval of the instrument by the chief of engineers. The court held no contract existed.
Defendants also maintain that there was a fatal variance between the pleadings and proof, and raised such question at the- trial, but the court ruled adversely to their contention. There being no cross errors assigned, the point need not be further noticed.
The evidence to which we have alluded, having been adduced by plaintiff, and not disputed, establishes prima facie plaintiff’s cause o.f action, and, if not overcome by defendants, would entitle it to judgment. We think the court fell into error in granting the non-suit.
Judgment reversed, and cause remanded for a new trial.