Williams, Judge,
delivered the opinion of the court:
This case grows out of a contract entered into between the plaintiff and the War Department for the construction of ten lavatory buildings at Fort Sheridan, Illinois.
The plaintiff seeks recovery on three items, viz:
(1) The sum of $2,440, imposed and deducted as liquidated damages because of 122 days’ delay in completing the work under the contract.
(2) The sum of $7,778.00, alleged loss and damage because of defendant’s requirement that plumbing fixtures manufactured by J. L. Mott Company, Inc., be installed instead of Armco plumbing fixtures which plaintiff claims met the requirements of the contract.
(3) The sum of $492.00 for fill for the interior of the buildings because of the change in the axes of the buildings from a north and south direction to an east and west direction.
The three items of the claim will be considered in the order of their statement.

1. Liquidated damage claim, $2,440

The contract was executed by the parties on December 21, 1927. It provides that work shall be commenced on or before December 27, 1927, and shall be completed on or before April 25, 1928.
*550 It further provides that the contract shall be subject to the written approval of the Quartermaster General, Washington, D.C., or such officer as he may designate and shall not be binding until approved. The contract was approved by an officer designated for that purpose by the Quartermaster General, on January 27, 1928, the plaintiff receiving notice of this fact on February 1, 1928, 31 days and 35 days, respectively, after the date fixed in the contract for commencement of the work.
Work under the contract was completed on August 25, 1928, or 122 days after the completion date in the contract. On settlement the defendant imposed liquidated damages at $20 per day for each of the 122 days of delay in completing the work, and withheld from the amount otherwise due plaintiff under the contract the sum of $2,440.
The plaintiff contends that by reason of the failure of the Quartermaster General to approve the contract in the manner provided therein, until a date subsequent to the date fixed in the contract for beginning the work, the time limit provision of the contract was waived, and that plaintiff became charged with a liability only of performing within a reasonable time, and that this is so without regard to whether the delay of the Quartermaster General in approving the contract was in fact the cause of, or contributed to, the delay in completion of the work. Cathell et al., v. United States, 46 C.Cls. 368; Snare & Triest Co. v. United States, 43 C.Cls. 364; Ittner v. United States, 43 C.Cls. 336; Little Falls Knitting Mills Co. v. United States, 44 C.Cls. 1, are cited as supporting this contention.
It is well settled that where a contract contains a clause which makes its final execution dependent upon the approval of the head of a department or some supervising official of the Government, it is not a binding obligation until such approval is had. Monroe v. United States, 184 U.S. 524. It is likewise well settled that where time is an essence of a contract and the Government by its delay prevents performance within the contract time, such delay will operate as a waiver of the time limit and give the contractor a reasonable time in which to perform. The effect of the *551 decisions relied upon by plaintiff is an affirmation of these well-settled rules.
While the contract in this case was not approved by the designated agent of the Quartermaster General until January 27, 1928, and did not become binding until that date, plaintiff, without waiting for such approval, immediately started to perform. On December 27, the date fixed in the contract for beginning the work, ground upon which the buildings were to be erected was broken. It is true this work was comparatively unimportant, and was performed by defendant upon authorization of plaintiff to prevent the lapsing of the funds available for the contract, but it was nevertheless the beginning of the work. Plaintiff’s foreman arrived on the premises not later than the middle of January, bringing with him the necessary tools and equipment. He proceeded immediately to provide adequate working quarters, prepare the ground, run lines, set stakes, and make all necessary preliminary preparations for the work. While the evidence is conflicting as to what extent the work was prosecuted prior to the receipt of notice of the approval of the contract, the conclusion is justified that the work of excavation was begun on or about January 18. Plaintiff stated that when he visited the site about the middle of February, foundations for four or five of the buildings were in, and that excavations for all but two of them had been made, and that the work up to that time had progressed very satisfactorily. The evidence shows that prior to that date plaintiff had been delayed approximately 15 days in pouring concrete for the foundations because of excessive cold weather, making it physically impossible for the work to have progressed to the point stated by plaintiff, if the work of excavation had not started prior to January 27. It is clear, therefore, that plaintiff commenced work and proceeded with it without waiting for the approval of the contract, and that he was not delayed in performance by the failure of the Quartermaster General to approve the contract prior to December 27, 1927, when work under it was to begin. His failure to perform within the time specified was due to his own delay in procuring the plumbing *552 fixtures called for in the specifications, which were not ordered until May 24, 1928, one month subsequent to the date named in the contract for completion of the work, and also one month after all work, except the installation of these fixtures, had been practically finished.
Had the failure of the Quartermaster General to approve the contract, until a day subsequent to the time designated for beginning the work, been the cause of the plaintiff’s delay in completing the work within the time stipulated, such failure, under the authorities cited by plaintiff, would have operated as a waiver of the time limit provision of the contract, and imposed upon the plaintiff an obligation to complete the work within a reasonable time. But, as we have seen, such was not the case. He went immediately upon the premises and started operations under the contract without waiting for its approval. In these circumstances the delay of the Quartermaster General in approving the contract cannot be construed as a waiver of the time provision. It did operate, however, by implication to extend the time for performance a corresponding length of time, continuing in force as applicable to the extended time the liquidated damage clause of the contract. Laidlow-Dunn-Gordon Co. v. United States, 47 C.Cls. 271; McGowen v. American Pressed Tan Bark Co., 121. U.S. 575; Hinkley & Powers v. United States, 49 C.Cls. 148. Plaintiff was therefore entitled to an extension of 35 days from April 25,1928, in which to complete the contract — -the length of time between December 27, 1927, when work was to begin, and February 1,1928, the date on which he received notice of the approval of the contract.
Plaintiff’s further contention that he is not liable in liquidated damages because the delay in completing the contract was caused by the action of the defendant in requiring the installation of J. L. Mott fixtures, which were not carried in stock by that company, but had to be specially manufactured on order, is without merit. The specifications required plaintiff to furnish J. L. Mott fixtures or equal. Pie knew in December 1927 that the Armco fixtures which he proposed to furnish would not be accepted by the Gov *553 ernment. The proof shows that had he ordered these fixtures promptly, even after the approval of the contract on February 1, 1928, they could have been manufactured and furnished in ample time to have enabled plaintiff to install them and complete all work under the contract within the time limit. There is not the slightest doubt but that this could have been done within the time as extended. Plaintiff delayed placing an order for the fixtures for more than four months after he knew definitely that he would not be permitted to install Axmco fixtures in the buildings. He alone was responsible for this delay and for the consequent delay in completing his contract.
The plaintiff upon this item of the claim is entitled to recover $700.00, the amount deducted as liquidated damages for the period of 35 days in which the time limit provision was by implication extended.

%. Glaim for $7,778.00, the difference between the cost of Mott plumbing fixtures and Armco plumbing fixtu/res.

The contract required plaintiff to furnish all labor and materials and perform all work required for the construction of ten lavoratories, complete, with concrete floors, for a consideration of $37,650.00, in strict accordance with the specifications, schedules, and drawings, all of' which were made a part of the contract. The specifications called for the installation of J. L. Mott Co. plumbing fixtures or equal. The J. L. Mott Co. had ceased the general manufacture of the special type of plumbing fixtures designated sometime prior to the date of the contract, but did manufacture and furnish them upon special orders. Aj>parently neither the contracting officer nor the plaintiff was aware of this fact at the time the contract was entered into.
The fact that the type of fixtures called for in the specifications had to be specially manufactured by the J. L. Mott Co. upon orders has no material bearing in any way other than the effect it may have had, if any, in delaying plaintiff in performing the contract, as it does not appear that the cost to the plaintiff of the fixtures procured upon special order was greater than it would have been had the fixtures *554 been regularly manufactured and carried in stock by the J. L. Mott Co. The plaintiff was able to obtain and did obtain the fixtures within a reasonable time after they were ordered.
The plaintiff had been furnished a copy of the specifications prior to the date on which he submitted his bid and knew that J. L. Mott Co. plumbing fixtures or “ equal ” would have to be installed. He made no inquiry to ascertain the cost of the J. L. Mott Co. fixtures and did not know what their cost would be when he signed the contract on December 21, 1927; nor does it appear that he made any effort before submitting his bid or signing the contract to ascertain what plumbing fixtures were equal to the J. L. Mott Co. fixtures or what the cost of such fixtures would be. Without informing himself in respect to this important item of cost in the performance of the contract, plaintiff submitted his bid, relying upon an estimate of the cost of that part of the work furnished to him orally by Mr. McGrath, who subsequently subcontracted for the plumbing work. McGrath’s estimate was based on the cost of Armco fixtures which he testifies defendant’s superintendent of construction at Fort Sheridan informed him would meet the requirements of the specifications.
Even if McGrath had been given this information by the defendant’s officer as claimed, and the proof as to that fact is not satisfactory, the Government would not be bound thereby. Plaintiff’s obligation is fixed by the plain provisions of the contract. He agreed to perform the work called for “ in accordance with the specifications, schedules, and drawings,” which are made a part of the contract. The specifications call for J. L. Mott fixtures or equal. It is not contended that the Armco fixtures which the plaintiff proposed to furnish were equal to the Mott fixtures, and the proof shows that they were not equal. The plaintiff was informed in January, prior to the approval of the contract by the Quartermaster General, that the Armco fixtures would not be accepted, and was also on February 9, 1928, informed by letter that the Armco fixtures had been submitted to the corps area quartermaster who had deter *555 mined that they were not equal to the kind of fixtures called for by the specifications. Plaintiff was again advised on February 24, 1928, that the Government would insist upon installation of the kind of fixtures designated in the specifications so far as style and material were concerned, but was told that the Government did not insist that they be J. L. Mott’s make, but that any equal or like fixture would be accepted. Plaintiff did not at any time thereafter offer to install plumbing fixtures of any other make equal to the Mott fixtures, but insisted at all times that he had a right under the contract to furnish Armco fixtures, and bases this item of the claim wholly on the difference in cost between Armco fixtures and J. L. Mott fixtures, which he was required to furnish. It is clear plaintiff’s contention that he should have been permitted to install Armco fixtures is without merit.
The further contention that plaintiff suffered financial loss because the roughing-in plumbing, installed by him in accordance with the defendant's specifications, precluded the use of any make of fixtures other than the Mott fixtures, and thus prevented him from exercising his right under the contract to furnish other fixtures equal to the Mott fixtures, is also without merit, as there is no proof that plaintiff could have procured other fixtures equal to the Mott fixtures at a cost less than he was required to pay for the Mott fixtures.
Plaintiff is not entitled to recover on this item of the claim.

S. Olaim, for $J/£8.00 for extra fill.

The original plans and drawings submitted to plaintiff and other prospective bidders show that the buildings were to be erected in a north and south direction. Between the time invitations for bids on the work were sent out and the date on which the contract was signed, defendant decided to change the plans and have the buildings erected in an east and west direction. The blueprint showing this change is dated December 27, 1927, which is six days subsequent to the execution of the contract. There is proof, *556 however, that plaintiff was informed of the proposed change before he signed the contract, and had gone over the ground where the buildings were to be located.
By reason of the change in plans whereby the buildings were turned around in the manner stated, the height of the foundation walls was increased above that originally specified, and required 32.5 more cubic yards of concrete in their construction than were called for in the original drawings. The increased height of the foundation walls necessitated an additional fill within the walls to bring the surface of the ground up to the floor level of the concrete flooring over what would have been required under the original drawings.
Plaintiff, during the progress of the work, made claim for compensation for the extra concrete and grading required by the changed plans, and was informed by the contracting officer that he would consider the claim after the work was completed and a check could be had of the cost of the extra work. Subsequently, the contracting officer issued his change order whereby plaintiff was paid $487.50 on account of the extra concrete furnished, but refused to authorize payment of the cost of the extra filling within the walls, amounting to $452.00, exclusive of profits.
Article 1 of the contract provided that plaintiff should receive in addition to the contract price $15.00 for each cubic yard of concrete used in the foundations in excess of that shown on the plans. The additional compensation of $487.50 awarded plaintiff for extra concrete furnished was in accordance with this contract provision. The contract provision for grading and filling is found in paragraph 27 of the specifications:
“ Grading. — The entire area of building within the foundation walls shall be graded or filled so as to permit the construction of concrete floor as shown on drawings.”
The grading and filling work required of the plaintiff under this specification was that shown on the original drawings where the buildings were to be erected in a north and south direction. It is not denied that the change in plans whereby the buildings were turned around and erected in an *557 east and west direction required plaintiff to do extra grading and filling within the walls of the buildings over that contemplated and shown in the original drawings. He is entitled to compensation for this extra work and expense, and the action of the contracting officer in refusing to issue a change order authorizing payment was so capricious and grossly erroneous as to imply bad faith, and the plaintiff, notwithstanding the provisions of article 5 of the contract, that no charge for any extra work or material will be allowed unless the same has been ordered in writing by the contracting officer and the price stated in such order, and the provisions of article 15 that all disputes arising under the contract shall be decided by the contracting officer or his duly authorized representative, subject to written appeal by the contractor within 30 days to the head of the department concerned, whose decision shall be conclusive upon the parties, is entitled to recover the actual cost of such extra grading and filling.
The plaintiff is therefore entitled to recover on this item of the claim $452.00.
It is ordered that a judgment be entered for the plaintiff in the sum of $1,152.00, representing $700.00 on item 1 of the claim, and $452.00 on item 3 of the claim.
Whaeey, Judge; LittletoN, Judgp; and GeeeN, Judge, concur.
Booth, Ghief Justice, did not hear this case, on account of illness, and took no part in its decision.