Whitaker, Judge,
delivered the opinion of the court:
This is another case where the defendant has received the benefit of work done by the contractor on the order of defendant’s representatives in charge of the work, but refuses to pay for it because the contract requirements were not complied with. It is a case of hardship, but one in which this court is powerless to give relief because of the contractor’s failure to insist on compliance with the plain provisions of the contract relative to changes.
It is a suit by a surety on the contractor’s bond, which paid amounts due by the contractor on the contract. The surety claims the defendant is indebted to the contractor, and that it is subrogated to its right to demand payment of the indebtedness.
It is not entitled to recover, of course, if the defendant ;is not indebted in fact to the contractor. We are obliged to hold that it is not.
The contractor Peter and A. J. Ellis, Inc., had a contract to construct the west extension of tlie steam distribution system of the central heating plant in Washington, D. C. Most of it was open trench work in and adjacent to streets and sidewalks in the city and in close proximity to buildings, sewers, gas, water, and electric mains.
As the trench was dug it was necessary to shore up the sides with temporary planking, timbering, sheeting, and other supports. Section 110 of the specifications required that earth backfilling be placed behind the shoring and, after the earth had been thoroughly tamped and packed to prevent settlement, for the removal of the temporary shoring. It was discovered, however, that the earth was of so unstable a character that settlement would occur if the temporary shoring were removed.
The contractor called this to the attention of the construction engineer. After several conferences this officer told the *36 contractor to complete the work, when it could be ascertained how much of the temporary shoring it had been necessary to leave in place and how much additional compensation the contractor was entitled to on account thereof. The contractor agreed and did the work. After it had been completed it presented its bill for something over nineteen thousand dollars.
The amount claimed is not in dispute, but the defendant says the contractor is not entitled to be paid because the contract requirement for securing the written approval of the head of the department was not complied with.
The additional work done was such as was contemplated by article 4 of the contract. That article provided for changes in the plans and specifications where the subsurface conditions encountered differed from those indicated by the specifications. When the specifications were drawn it was thought the condition of the soil was such that the temporary shoring could be removed. As the work progressed it was found it could not be.
In such contingency article 4 provides for the procedure to be followed. It is that the contracting officer, “with the written approval of the head of the department or his representative” shall make the necessary changes in the specifications.
The specifications in this case were changed by Mr. Melick, the construction engineer, and not by L. W. Robert, Jr., Assistant Secretary of the Treasury, who was the contracting officer. Melick’s immediate superior was, first, James W. Wetmore, the supervising architect, and, later, Admiral Peoples, the head of the Procurement Division of the Treasury Department. Robert, in turn, was the superior of the supervising architect and of the head of the Procurement Division. Herman J. Bounds was Melick’s subordinate, in immediate charge of the work.
The change was not ordered by the contracting officer; it was ordered by Bounds, with the concurrence of the construction engineer, at a conference in the latter’s office. However, it appears from a letter from the Assistant Director of Procurement to the Comptroller General that the head of the Procurement Division was fully cognizant of the order *37 given. Whether or not the contracting officer was cognizant of it does not appear.
However, article 18 (b) of the contract provides that “the term ‘contracting officer’ as used herein shall include his duly appointed successor or his duly authorized representative.” From the conduct of the parties in this case and from our knowledge of the procedure in the Treasury Department, of which we may take judicial notice, we may assume that the Director of the Procurement Division was the authorized representative of the contracting officer. (When the contractor presented its claim for payment for this additional work, this claim was acted upon not by the contracting officer in person but by Admiral Peoples, the head of the Procurement Division.) Under the circumstances of this case, we are of the opinion that the change was one ordered by the “contracting officer” as that term is defined in the contract.
However, article 4 provides that the change must be ordered by the contracting officer “with the written approval of the head of the department or his representative.” The change certainly did not have the approval in writing of the head of the department or his representative, and, so far as it appears from the proof, the head of the department or his representative had no knowledge of the change.
Article 4 should be read in connection with article 3 of the contract. United States v. Rice, et al., 317 U. S. 61. Article 3 provides for changes in the plans and specifications generally. It provides that “no change involving an estimated increase or decrease of more than Five Plundred Dollars shall be ordered [by the contracting officer] unless approved in writing by the head of the department or his duly authorized representative.” This article gives the contracting officer the right to make changes involving less than $500, but permits the making of a change involving a greater amount only with the approval in' writing of the head of the department or his duly authorized representative. This change involved more than $19,000 and did not have the written approval of the head of the department.
It is seen, therefore, that there has been a complete failure to comply with the provisions of article 4 and of article 3. Both this court and the Supreme Court have held *38 that there can be no recovery for additional work performed where there has been a failure to comply with these provisions of the contract, or a similar provision contained in Article 5. Plumley v. United States, 226 U. S. 545, 547; United States v. McShain, 308 U. S. 512, 620; Wisconsin Bridge & Iron Oo. v. United States, 97 C. Cls. 165; Arnold M. Diamond v. United States, 98 C. Cls. 428.
It is true articles 3 and 4 were incorporated in the contract by the defendant for its benefit and that defendant’s representatives ordered the change without complying with them. Had defendant’s construction engineer and supervising-architect had the authority to waive these provisions, we would hold that they had been waived and that the contractor was entitled to recover notwithstanding noncompliance with them; but these representatives did not have the authority to waive them and the contract gave all parties notice that they did not have. Only the head of the department or his duly .authorized representative could waive them. The contractor relied on the unauthorized promises of the construction engineer at its peril.
The head of the department, or his duly authorized agent, of course, could have ratified these unauthorized acts, and in our opinion should have done so, since the work was necessary and for defendant’s benefit, but he did not do so, and we are powerless to do it for him.
From this case two lessons are to be drawn: (1) contracting officers and heads of departments should exercise the great powers conferred on them by these contracts to do equity; they should not feel under obligation to take advantage of technicalities, where to do so would defeat justice ; (2) contractors must study their contracts and insist on compliance with their terms; before relying on any promise they should ascertain that it is made by a person having authority to make it.
We are obliged to hold that the defendant is not indebted to the contractor and, therefore, that the contractor’s surety is not entitled to recover. However, as we stated in the beginning, this is a case of great hardship and one that com *39 mends itself to the consideration of Congress. Plaintiff’s petition will be dismissed. It is so ordered.
Whaley, Chief Justice, and Booth, Chief Justice (retired), recalled, concur.