**ALAMO CONST. CO., Inc. v. UNITED STATES.**

No. 46889.

United States Court of Claims.

Nov. 7, 1949.

M. Walton Hendry, Washington, D. C., for plaintiff. Bernard J. Gallagher and J. Roy Thompson, Jr., Washington, D. C., were on the brief.

Carl Eardley, Washington, D. C., with whom was Assistant Attorney General H. G. Morison, for defendant.

Before JONES, Chief Judge, and HOWELL, MADDEN, WHITAKER and LITTLETON, Judges.

HOWELL, Judge.

Plaintiff sues to recover the sum of $4,227.70, the amount of alleged extra costs incurred in the performance of a re-roofing contract with the defendant at Camp Hulen, Texas.

The invitation for bids provided as follows:

"V. Investigation of Conditions.—Prospective bidders or their authorized agents are expected to examine the plans and specifications pertaining to the work; to visit the site of the work, to acquaint themselves with all available information, including local conditions and the availability of labor and to make their own estimates of the facilities required and difficulties attending the execution of the work. Such estimates are expected to include a consideration of uncertainty of weather and all other contingencies. *No allowances will be made by the Government for failure of a bidder to acquaint himself properly with the requirements of the work or to estimate correctly the difficulties attending the execution thereof.*" [Italics supplied.]

The evidence discloses that although the plaintiff was engaged in other work in the

same camp where the buildings to be re-roofed were located, neither plaintiff nor any of its agents made any effort to acquaint itself with the conditions of the old roofing in connection with the preparation of its bid. Furthermore, wrinkles and patches were plainly visible from the ground.

On the basis of plaintiff's bid, a contract was awarded on June 18, 1942, and approved August 27, 1942, by the Executive Assistant to the Division Engineer in charge of repairs and utilities. The contract called for the work to begin on June 25, 1942, and the evidence discloses that it was begun shortly thereafter.

As soon as the work had been started, it was found that the existing rolled roofing was wrinkled and patched in numerous places which produced a very uneven surface upon which to lay the new shingles as required under the contract.

Work was then stopped by defendant's inspectors and a conference held between plaintiff's president and the contracting officer after which plaintiff was required to cut away the wrinkles and patches in order to make a smooth surface so that the new shingles could be laid in a satisfactory and workmanlike manner.

The contract contained General Conditions 16 and 20:

"GC—16. *Interpretation of specifications.*—On all questions relating to the acceptability of materials or equipment, classification of materials, the proper execution of the work, and the interpretation of the specifications, the decision of the contracting officer shall be final, subject to appeal, as provided for in Article 15 of the contract.

"GC—20. *Claims, protests and appeals.* —(a) If the contractor considers any work demanded of him to be outside the requirements of the contract or if he considers any action or ruling of the contracting officer or of the inspectors to be unfair, the contractor shall without undue delay, upon such demand, action, or ruling, submit his protest thereto in writing to the contracting officer, stating clearly and in detail the basis of his objections. The contracting officer shall

thereupon promptly investigate the complaint and furnish the contractor his decision, in writing, thereon. If the contractor is not satisfied with the decision of the contracting officer, he may, within thirty days, appeal in writing to the Secretary of War, whose decision or that of his duly authorized representative shall be final and binding upon the parties to the contract. Except for such protests or objections as are made of record in the manner herein specified and within the time limit stated, the records, rulings, instructions or decisions of the contracting officer shall be final and conclusive.

"(b) All appeals from decisions of the contracting officer authorized under the contract shall be addressed to the Secretary of War, Washington, D. C. The appeal shall contain all the facts or circumstances upon which the contractor bases his claim for relief and should be presented to the contracting officer for transmittal within the time provided therefor in the contract."

Plaintiff orally protested against doing this work required by the contracting officer, although no written order to do it was requested or given.

On August 29, 1942, a hurricane occurred in the vicinity, damaging certain of the buildings not yet re-roofed, which damage was repaired by the defendant. While the repairs added somewhat to the quantity of patches on the roofs, the evidence discloses that plaintiff made no claim for extra work at the time.

Just before the re-roofing was completed in March 1943, plaintiff on December 22, 1942, and February 10, 1943, in letters to the Post Engineer relating to other matters, stated respectively: "* * * We wish again to remind you that we think some allowance should be allowed us in the extra work done in preparing the roofs to receive the shingles." and "We still feel that we should be compensated for the extra work of removing cupped and uneven portion of the slate roofing before we could apply the asbestos shingles * * * There was nothing in the specifications about doing anything in the way of preparation for the receiving of these shingles. It was a condition found after the job got under way and

we went ahead and did it and we should be paid for it."

Pursuant to advice received in response to its letter of March 5, 1943, to the Division Engineer at Dallas, Texas, plaintiff, on June 2, 1943, submitted a claim "for additional compensation on account of extra work done in preparing the roofs."

On June 30, 1943, the contracting officer advised plaintiff that as it was his opinion that no extra work was involved over that necessarily required under the contract, the claim would not be approved. Plaintiff was also advised that if appeal to the Secretary of War was desired, it should present it in writing within thirty days as required by Article 15 and General Conditions 20 of the contract.

On July 8, 1943, plaintiff gave a release reserving a claim for extra compensation on account of the claimed extra work. Some five months later, on November 29, 1943, plaintiff presented a claim for extra work under the contract to the Secretary of War in the amount of $3,580.27. The matter was referred to the War Department Board of Contract Appeals where the defendant moved to dismiss the appeal on the ground that it had not been taken in time. The motion was allowed and the appeal dismissed, after which an application for reconsideration was filed and denied. We too are of the opinion that the plaintiff is not entitled to recover.

In the first place, plaintiff says that an executive assistant to the Division Engineer in charge of Repairs and Utilities actually approved the contract, whereas Article 23 contained this requirement: "Approval.— This contract shall be subject to the written approval of the Division Engineer, Southwestern Division, Repairs and Utilities Branch, and shall not be binding until so approved."

Hence, the provisions of the contract are not binding upon the parties and the amount sued for ($4,227.70) represents quantum meruit.

As authority for this contention, plaintiff directs our attention to Monroe v. United States, 184 U.S. 524, 22 S.Ct. 444, 46 L.Ed. 670, later cited in Griffiths v. United States, 77 Ct.Cl. 542, 550. In the Monroe case the facts were entirely different from those in the instant case, in that the Chief of Engineers whose approval was required by the contract actually disapproved the contract so that it had no binding force and effect.

The officer who executed this contract was at that time the Chief of the Repairs and Utilities Branch, Southwestern Division, Engineers Office, and by virtue of such position was authorized to and in fact did approve the contract in accordance with the terms thereof. Furthermore, the plaintiff with knowledge of the contract provisions as well as the actual execution of the contract by the Executive Assistant proceeded to perform the contract and to accept payments for his work, and at no time raised the question of the validity of the contract until the filing of this suit.

■ Under these circumstances, as the defendant bound itself by paying the plaintiff in accordance with the terms of the contract, its terms are equally binding upon the plaintiff who at this time is estopped to deny the rights of the defendant under such contract.

Plaintiff then says that if there was a binding contract, the additional work was ordered by the contracting officer.

This contract contained Article 5 as follows: "Extras.—Except as otherwise herein provided, no charge for any extra work or material will be allowed unless the same has been ordered in writing by the contracting officer and the price stated in such order."

■ Obviously, the requirements of this article were never met, but plaintiff contends the additional work was ordered by the contracting officer who promised to recommend payment for the work. We have considered the evidence on this point and find that it does not support this contention.

The contracting officer did order the work done and plaintiff conceded that it should be done if the work were to be performed in a satisfactory and workmanlike manner.

This was a contract to *re-roof* a number of buildings and this fact alone was sufficient to put the contractor on notice that the existing roofs were in such a state of deterioration as to require *re-roofing*. The invitation for bids expressly required the

bidders to acquaint themselves with the difficulties attending the execution of the work and to make their estimates accordingly. The contract provided in paragraph GC—42 as follows: "Work Covered by Contract Price: The contractor shall, under the contract unit prices, furnish and pay for all materials, labor and all temporary, *preparatory and incidental* work, furnish all accessories, and do everything which may be necessary to carry out the contract in good faith which contemplates the completion of everything in good working order, of good materials, and with accurate workmanship, skillfully fitted and properly put together." [Italics supplied.] and further in paragraph SC—8: "Connections with Existing Work: Where connections are made between new and existing work, the connection shall be made in a thorough and workmanlike manner to the satisfaction of the Utilities Officer."

The contract plainly contemplated a certain amount of preparatory work, and plaintiff must be charged with the obligations placed upon him by the contract.

When he was first called upon to perform the work plaintiff knew or should have known how to make known his protest. General Conditions 16 and 20, supra, gave authority to the contracting officer to interpret the specifications subject to appeal as provided in Article 15 of the contract and pointed the way for plaintiff to appeal from any decision it did not like.

However, no claim of any kind or appeal was made except as hereinbefore indicated. Where there has been such a failure to comply with the provisions of the contract, especially those of Article 5, this court and the Supreme Court have held that there can be no recovery for additional work performed. Globe Indemnity Co. v. United States, 102 Ct.Cl. 21; Plumley v. United States, 226 U.S. 545, 33 S.Ct. 139, 57 L.Ed. 342; John McShain, Inc. v. United States, 88 Ct.Cl. 284; United States v. John McShain, Inc., 308 U.S. 512, 520, 60 S.Ct. 134, 84 L.Ed. 437; Wisconsin Bridge & Iron Co. v. United States, 97 Ct.Cl. 165; Arnold M. Diamond v. United States, 98 Ct.Cl. 428; Pope v. United States, 76 Ct.Cl. 64; Griffiths v. United States, 74 Ct.Cl. 245.

Article 15 of the contract provided: "Disputes.—Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer subject to written appeal by the contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties thereto. In the meantime the contractor shall diligently proceed with the work as directed."

Plaintiff argues that since the interpretation of the contract is a matter of law, no appeal was necessary from the decision of the contracting officer.

Under the language contained in Article 15 above, it is plain that the decision of the contracting officer or the head of the department on appeal is not final. See Callahan Construction Co. v. United States, 91 Ct.Cl. 538, 616; Silas Mason Company, Inc. v. United States, 62 F. Supp. 432, 105 Ct.Cl. 27, 53; and Pfotzer v. United States, 77 F. Supp. 390, 111 Ct.Cl. 184, 227.

However, we conclude as a matter of law that under the evidence, the invitation for bids, contract, and specifications, plaintiff is not entitled to recover. Therefore it is not necessary for us to further consider the question of the finality of decisions on questions of law.

From what we have already said, we do not believe it is necessary to consider plaintiff's last ground for recovery at length. It is on the theory that it was damaged by reason of false and misleading specifications covering the work to be performed. We have examined these specifications and carefully noted plaintiff's arguments in connection therewith. As a result, we have concluded that the theory is not well founded especially in view of plaintiff's apparent failure to acquaint itself with the nature of the work to be performed under the contract.

The petition is dismissed. It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.