Jones, Chief Judge,
delivered the opinion of the court:
Plaintiffs entered into a contract with the defendant to-protect, preserve and maintain the Illinois Ordnance Plant which during World War II had been a shell and bomb-loading plant, and which had, at the time, been deactivated.. A detailed statement of the services to be rendered is. set out in finding 5.
*168 The plant and facilities included some 22,000 acres of land ■and 532 buildings, together with railroad lines, roads, water -filtration and sewage disposal plants, and fire stations.
Prior to the execution of the contract and after the facility had been deactivated, the War Assets Administration had a survey made by an engineering firm to determine the estimated cost of protection and maintenance of the facility in its deactivated condition. The survey resulted in an estimate of approximately $17,000 per month as the cost of such services.
The War Assets Administration invited bids in April or May 1946, the plaintiffs’ bid was submitted May 8,1946, and the award of the contract to plaintiffs was approved by the War Assets Administration June 27,1946.
During June and July 1946 the officials of the 'central office of the War Assets Administration in Washington and the officials of its regional office in St. Louis discussed by mail, telegraph and telephone plans for the gradual reactivation of the facility looking toward the multiple occupancy of it by tenants.
On July 1, 1946, the Acting Deputy Begional Director in St. Louis wrote to the central office stating that the $17,000 per month reimbursable cost was for the maintenance and protection of the plant only in its deactivated status, and not as a going operation, stating that the rehabilitation work would probably run the monthly expense to approximately $41,700, and suggesting that a 5 percent additional fee be allowed the contractor for the additional work necessary to keep the organization in a going condition. He suggested that it should be agreed upon at that time and should be on the basis of 5 percent of the cost of the additional work, to be added to his fixed fee. He advised that the contractor was agreeable' to this, but it would necessitate a rider to the contract.
The Deputy Director in Washington on July 15, 1946, replied that his office had already approved the protection and maintenance cost of $17,000 per month, plus a fixed fee of $850 pet month, and that if acceptable to the Stiers Bealty Management Company, which was the contemplated contractor, it would approve a supplemental agreement, for per *169 forming tbe necessary alterations to make this plant ready for multiple occupancy at an. estimated cost of $45,700 total and a fixed fee of $2,285.
The contract was executed August 8,1946, and was to run for a period of one year, being subject to renewal or cancellation by either party under specified conditions.
Plaintiffs were to be reimbursed for all the cost and expense of such protection and maintenance, and were also to receive in addition a fixed fee of $850 per month which reflected 5 percent of the engineers’ estimate of over-all cost.
Among the general conditions embodied in the contract as executed was the following provision:
Government may at any time by a written order and without, notice to the sureties, if any, issue additional instructions, require additional services, require changes or alterations in the Services or direct the omission of Services covered by this Contract. If, in the opinion of Government, said additions, changes, alterations, or omissions result in a material increase or decrease in the amount or character of the Services, an equitable adjustment of the fixed fee will be made and the contract modified in writing accordingly. The amount of the fixed fee will not be adjusted or changed because of any errors or omissions in computing the estimated Cost of the Services, or where the actual cost varies from the estimated cost.
The defendant terminated the contract on April 18, 1947, in conformity with contract provisions. It has reimbursed plaintiffs for all costs incurred and has paid the fixed fee on the basis of $850 per month.
The costs incurred by plaintiffs, for all of which they have been reimbursed, totaled $296,839.55. These reimbursable costs actually incurred exceeded the costs as estimated by $155,172.89, or 108 percent. During the period of operation under the contract extensive preparations were made for prospective leasing of portions of the facility to tenants who would become lessees of the Government, and portions of the facility were occupied by several firms and three Government agencies.
Plaintiffs knew at the time of the execution of the contract and for some time prior thereto of defendant’s plans to reactivate the facility or portions of it looking toward *170 possible leases of reactivated portions. Soon after work began plaintiffs were given orders by defendant to reopen and reactivate portions of the facility for multiple occupancy by tenants leasing from the defendant. These orders were oral; none of them was given in writing. Officials in the St. Louis Regional Office of the War Assets Administration telephoned orders and instructions to plaintiffs or to defendant’s employees at the facility who relayed them to plaintiffs, and plaintiffs carried out the orders and instruc.tions so given.
A few weeks after the service operations under the contract were begun plaintiffs applied to defendant’s responsible officials in the St. Louis office for an adjustment of the fixed fee payable under the contract. The regional official agreed with plaintiffs that the orders and instructions which had been and were being issued to plaintiffs comprised “additional instructions” and required “additional services” and “changes or alterations in the Services,” and therefore warranted the issuance of a formal change order relating to plaintiffs’ fee. The regional official believed it impossible at that time to make a reasonable estimate of the cost finally to be incurred by the plaintiffs.
No change order was given and no adjustment of plaintiffs’ fees was made. The official to whom plaintiffs had applied for such adjustment severed his connection with the War Assets Administration before the contract was terminated.
On September 18,1947, one of the officials of the regional office wrote plaintiffs asking for a detailed statement showing the estimated labor and material costs which were used as a basis for submitting the original bill aiid also for reflecting the increased costs from time to time throughout the period during which the contract was in force, stating “this should be a detailed itemization clearly showing changes as they occurred throughout the period in question.” Plaintiffs by letter dated June 12, 1948, submitted to defendant a detailed statement showing the excess costs over the amount originally estimated. On September 14,1948, the Regional Director of the War Assets Administration replied to plaintiffs’ letter of June 12, 1948, acknowledging their claim for an increase .in the fixed fee in the amount of $7,447.82, but *171 inviting their attention to Article Y of the contract which stated in part:
The amount of the fixed fee will not be adjusted or changed because of any errors or omissions in computing the estimated Cost of the Services, or where the actual cost varies from the estimated cost.
The letter also stated that there was no itemization of the amount claimed to be attributable to the Government’s requirements that the plaintiffs perform work in addition to that contemplated by the contract; it also called attention to the fact that no written change order had been issued, and on this basis denied plaintiffs’ claim for additional fees.
This suit is limited to the claim for additional fees caused by the extensive additional work and expense which the reactivation, renovation, repairing and rebuilding made necessary.
Defendant pleads that since there was no written change order and since the fee was a fixed one with a provision that it would not be adjusted because of any errors or omissions in computing the estimated cost of the service the plaintiffs are not entitled to any recovery.
If there were no additional facts or circumstances connected with the case this defense would be ironclad. But there are extraordinary facts and circumstances which take this case far beyond the reach of these provisions. The officials of both the plaintiffs and the defendant were familiar with the circumstances under which the contract was formed. It is clear that the contract as concluded contemplated the protection and maintenance of a deactivated plant. The defendant had made á survey of the estimated cost of protection and maintenance of a deactivated plant,[5] and it was upon that basis that the invitations to bid were issued, the bids submitted, and the contract finally awarded.[6] The fee, while fixed, was nevertheless based, as all parties knew, upon the estimated cost of protection and maintenance of the plant *172 in a deactivated condition, and it is clear that all parties understood and intended there would be additional compensation to plaintiffs to cover the added work and expense connected with any reactivation of the plant.
That such was the defendant’s understanding is amply set forth in Finding 3.' The local officials.of the War Assets Administration, after conferences with the central office authorities of that organization, had agreed with plaintiffs that there should be additional pay to cover the added work and expense connected with any reactivation of the plant. The Negional Director had written the Deputy Director in Washington saying that there should be a 5 percent addition to the fixed fee to cover the additional work and expense, and the Deputy Director had replied giving his approval of such an arrangement.
The reactivation was ordered orally by defendant and began soon after the beginning of the contract period, and very soon thereafter plaintiffs began to ask for an adjustment. They were assured that the adjustment would be made, and were asked to continue operations after having been given this assurance. The matter was discussed repeatedly. Plaintiffs were faced with a dilemma. If they repudiated the contract and walked away leaving the plant unprotected they would be subject to possible damages. With the repeated statement that adjustments would be made and the written statements made before the execution of the contract by both the Regional Director and the Deputy General Director of the War Assets Administration that a rider or a supplemental contract would be executed covering such additional services as might be required, we are convinced that this is a proper situation for recovery by plaintiffs of compensation for the additional costs incurred and services rendered at the request and for the benefit of defendant. See W. H. Armstrong v. United States, 98 C. Cls. 519, and Griffiths v. United States, 77 C. Cls. 542.
From the record, however, we are unable to find that more than 20 percent (i. e. $31,034.58) of the excess of the actual costs over the estimate prepared by the representatives of the Government of the cost of operating the project in a deactivated state was attributable to the reactivation. The nature *173 of the remaining excess costs is so obscured in the record that it is impossible to determine which costs, if any, are attributable to reactivation, and which costs result merely from an enlargement over the estimate of the work that would have been required in connection with a deactivated project.
We are allowing to plaintiffs, therefore, an amount equal to 5 percent of the excess costs attributable to reactivation,[7] i. e., a total of 1 percent of the amount by which the actual costs exceeded the Government survey’s estimated costs. We feel certain both contracting parties intended that plaintiffs should be paid a greater sum than this, but since the record does not clearly show any way of truly apportioning the remaining excess costs, the plaintiffs’ recovery must be limited as herein set forth, to the amount of $1,551.73.
. It is so ordered.
Howell, Judge;. Madden, Judge; Whitaker, Judge; and Littleton, Judge, concur.

 That survey produced an estimate of approximately $17,000 per month as the cost of protection and maintenance for the facility in its deactivated condition (Finding 2).

 Paragraph 5 of the contract provided that the contractor would be “paid or reimbursed for the cost of the Services * * * which is estimated to be $17,000”' .

 These costs include, inter alia, the amounts paid to the assistant general manager, the tractor operator, the tractor driver, the operator of highway equipment tractor, and the work of restoration, renovation, alteration, dismantling, and demolition. ...