Booth, Chief Justice,
delivered the opinion of the court:
This case is now before the court upon plaintiff’s motion for a new trial.-
The plaintiff is a Pennsylvania corporation known as -John McShain, Inc. On April I, 1934, plaintiff contracted .in writing with the United States to furnish all labor and materials and perform all work for clearing the site, as well as to do all essential excavation and construct foundations for the erection of an extension to the Internal Revenue Building in Washington.
The work exacted by the contract and specifications included the site bounded by Pennsylvania Avenue, Tenth, Eleventh, and C Streets NW., and the expressed consideration was $149,200. On this site were a number of buildings (Finding 5) which plaintiff was to remove, and in connection with the necessary excavation to be made plaintiff was advised by the specifications that “The term ‘earth’ as used’ in this paragraph shall be accepted as defining all material * * * practicable to remove and handle with pick and shovel or by hand * * * including boulders up to y2 cubic yard in size.”
Within the limits of the site was a large vacant lot covered with cinders, and underneath the surface, in nowise visible from the usual inspection, was a large quantity of reinforced concrete put there in former years as a foundation for the building which had originally stood thereon. Plaintiff was told to remove the concrete and submit to the Supervising Architect through the construction engineer a claim for so doing. This the plaintiff did.
Paragraph 59 of the specifications reads as follows:
If other material, not indicated on the drawings or specified herein, is encountered within the limits of the excavations required under the contract, or if the actual sub-surface conditions as encountered vary materially from the conditions as shown and specified, then the contractor shall continue with the work and shall submit to the Supervising Architect through the Construe *295 tion Engineer or other authorized representative • of the Government a complete report of the conditions encountered, and proper adjustment will be made in the contract as determined by the contracting officer.
Plaintiff’s claim for $1,350 for performing- this work was allowed and approved in accord with the contract and specifications (Finding 5). The General Accounting Office sought to reverse the allowance, and did disapprove and disallow its payment. The defendant does not challenge plaintiff’s right under the law to receive a judgment for the sum involved. There are a great number of cases upholding plaintiff’s right to recover. We will not cite them all. Penn Bridge Co. v. United States, 59 C. Cls. 892, and McShain Co. v. United States, 83 C. Cls. 405, are in point. Judgment for $1,350 will be awarded the plaintiff on this item.
What we previously said and held with respect to the facts as found in Findings 6 and 7 was erroneous. Plaintiff’s motion for a new trial covering this item points out the error as to the principle of law applicable.
Paragraphs 66 and 67 of the specifications are as follows:
66. Backfill over sub-drains outside the foundation or area walls to within 6 inches of the tops of walls shall be clean, hard gravel or broken stone or slag that will pass a 3-inch mesh and be retained on a %-inch mesh screen. See details on Drawing No. E-404. The reinforced paper next to the backfill shall be a strong, two ply, kraft paper with asphalt membrane in the center; the paper to be reinforced with crossed fibers completely embedded in the asphalt.
67. All other backfilling shall be clean earth placed in horizontal layers not over 8 inches in depth. Each layer shall be thoroughly tamped, packed, or puddled, as directed, so that no settlement shall occur.
Sub-drainage was provided for at three different locations, i. e., outside the exterior foundations, outside the areaway wall, and underneath the center portion of the concrete slab. It is conceded that with respect to the first two locations the plans and specifications exacted a backfill composed of clean, hard gravel or broken stone or slag that would pass a 3-inch mesh and be retained on a %-inch mesh screen. *296 Plaintiff complied with the above plans and specifications, respecting sub-drainage and was paid therefor.
It is by this suit contended that the backfill over the sub-drainage to be placed beneath the areaway concrete slab,, which extended from the exterior foundation wall of the building to the outer limits of the concrete slab areaway,, was to be composed of clean earth as stated in paragraph. 61 of the specifications. The plaintiff was not permitted, by the construction engineer to use clean earth. He was-required by this official to backfill with clean, hard gravel as provided in specification 66. Plaintiff did not assent to: doing the work in accord with the construction .engineer’^ views.
During the course of existing differences over the backfill item, the construction engineer in order to forestall an apparent delay in finishing the work requested the plaintiff in writing to proceed with the same and at the same time said “your observance of this request to proceed with the work”' will be the subject of an adjustment of the costs later on. Using a backfill of gravel increased the plaintiff’s cost of doing the work by the sum of $1,817.93.
Specification 66 refers to Drawing E-404 and this drawing points out where the subsurface drains are to be installed, and does not provide for a backfill of gravel as to the tile drain to be installed underneath the center of the concrete-slab.
It is admitted that a difference existed between the specifications and the work called for under the plans and this-difference was as to the character of backfill over the drains. Drawing E-404 expressly discloses an entire absence of any requirement to backfill the drainage area under the center of the concrete slab with gravel, and the determination of this question involved not a determination of facts but an interpretation of the contract, drawing, and specifications.
The contracting officer, in order to reach a conclusion, did' of necessity predicate the same by construing the specifications and drawing to exact a backfill of gravel for the drain under the concrete slab by implication. It could not have *297 been done otherwise, for it is clear that no express language imposed this duty upon the contractor. The official was in doubt and his request to the contractor to proceed in accord with his wishes and later adjust the issue indicates that what was to be determined was a construction of the scope of the contract, specifications, and drawing.
The case of Davis v. United, States, 82 C. Cls. 334, 346, is similar to the instant one. In the Damis ease this court held—
There is no question that parties to a contract are competent to make a stipulation of this kind, and its provisions, when made, are binding upon them. But the competency of the parties to so stipulate, as the. courts have many times pointed out, is limited to the decision of questions of fact arising under the contract, such as the quantity and quality of materials delivered, whether the work performed meets contract requirements, causes of delay in the performance of the work, etc. These are questions of fact, the correct solution of which is usually largely dependent on professional knowledge and skill. They are questions which the parties to a contract may properly submit to the determination of the contracting officer or head of the department and lawfully agree to be bound by his decision.
The plaintiff performed this extra work under protest. As a matter of fact, a proposal for performing it and the added cost involved were furnished to and considered by the defendant, and, notwithstanding the fact that subsequent to its rejection the plaintiff proceeded under the contract to obtain an extra allowance, we now think that under the decision of - this court in the Davis case, supra, the plaintiff is entitled to a judgment for $1,877.93 for performing this extra work. The amount the plaintiff seeks is not ■challenged by the defendant and it will be included in the final award.
The plaintiff seeks to have included in any judgment awarding it damages the sum of $565.45 alleged to have been paid as rental for pile-driving equipment and wages of a crew to operate the same for thirteen days. When plaintiff *298 notified the construction engineer that pile driving was completed and the pile-driving equipment was to be removed from the site of the work, the engineer gave express notice that the pile driving had not been completed, and the removal of pile-driving equipment as contemplated would be at the risk of the contractor.
The notice of intention to remove the pile-driving equipment was given September 20, 1934. Following this notice, and subsequent to the expiration of the thirteen-day period of delay claimed, the plaintiff performed extra work which involved the employment of this pile-driving equipment, and for this extra work the plaintiff received the sum of $1,712.52, the amount claimed by it in full payment for the same. In view of the status of the pile-driving work on the date the plaintiff notified defendant of its intention to remove the pile-driving equipment it would have been extremely hazardous to have removed it. The pile-driving work had not been completed. See findings 8, 9, 10, and 11.
Paragraphs 61 and 62 of the specifications are as follows:
61. Service lines, etc.- — Before commencing work, the contractor shall give due notice to the owners of any public service utilities, and give them reasonable opportunity to remove any of their service lines leading into or crossing the site. It is not the intention to include in this contract the cost of any new work on sewers or service lines made necessary or desirable by the removal of existing lines.
62. Abandoned or unclaimed service lines within the limits of the excavation shall be removed under this contract as a part of the excavation. The contractor shall properly plug,, cap, or otherwise terminate any such abandoned or unclaimed service lines that he may encounter in the course of the work.
A portion of C Street was included within the site of’ plaintiff’s contract work, and the above specifications point, out expressly what was to be done with respect to removing-service lines remaining therein. The plaintiff in making inspection of the premises discovered a sewer. Some dispute obtains as to whether plaintiff knew the sewer was alive or dead.' The dispute is immaterial. Plaintiff did receive. *299 knowledge that it was alive and information that it was the-intention of the District Government to relocate it.
Excavation was commenced by plaintiff within the C' Street area on May 1, 1934, and three days later the sewer-was struck. Excavation within the area was discontinued, and on the same day, May 4, 1934, the plaintiff notified the defendant’s contracting officer that the District Government had not relocated the sewer and requested an extension of time until 0 Street could be turned over to the contractor. May 9, 1934, the contracting officer denied an extension of time, and also rejected a contention that the failure to relocate the sewer had in anywise retarded the progress of plaintiff’s contract work. The record discloses that the contracting officer was right, and that the plaintiff was not delayed because of the removal of-the sewer.'
The plaintiff did not appeal from this decision, as it had a right to do under the contract. Failure to do so renders, it impossible to sustain the contentions advanced for a judgment for the amount of this item in suit. Davis case, supra. See also Penn Bridge Co., supra, wherein it was held, as to a. contention similar to the one now advanced, as follows:
It is sought to distinguish this case from those cited by the contention that in those cases the authorized officers were finding facts, while the officer in this case was reaching a legal conclusion. If the contention could be of any force under any circumstances, it is sufficient to say that the determination by the contracting officer that the delay was the fault of the United States was the determination of a fact [p. 899].
Plaintiff’s motion for new trial is allowed; the former findings, judgment, and opinion (November 14,1938) are vacated and withdrawn, and new findings with judgment and this opinion are this day filed.
Judgment for the plaintiff for $3,221.93. It is so ordered.
Whaley, Judge/ Littleton, Judge; and Geeen, Judge, concur.
Williams, Judge, took no part in the decision of this case..