## UNITED STATES *v.* MOORMAN ET AL., DOING BUSINESS AS J. W. MOORMAN & SON.

No. 97.   Argued December 6, 1949.—Decided January 9, 1950.

*Morton Liftin* argued the cause for the United States. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Morison* and *Paul A. Sweeney.*

*V. J. Bodovitz* argued the cause for respondents.   With him on the brief was *F. A. Bodovitz.*

MR. JUSTICE BLACK delivered the opinion of the Court.

The questions presented relate to the interpretation and validity of terms in a government construction contract providing that in contractual disputes the decisions of the Secretary of War or his authorized representative shall be final and binding.

The respondent partnership entered into a standard form contract with the United States to grade the site of a proposed aircraft assembly plant. Article 1 of the contract provided for payment of 24 cents per cubic yard of grading, satisfactorily completed "in strict accordance with the specifications, schedules, and drawings, all of which are made a part hereof . . . ." A proposed taxiway was shown on the drawings but was not located within the plant site as described in the specifications. The present controversy concerns the question of whether the contract required respondent to grade this taxiway.

On demand of the Government, respondent graded for the taxiway at the point shown on the drawings. It then filed a claim with the contracting officer asking extra compensation, 84 cents per cubic yard instead of the 24 cents specified in the contract. Upon investigation the contracting officer made findings of fact which led him to reject respondent's claim. Appeal was taken to the Secretary of War, whose authorized representative also considered the facts and denied the claim. According to Par. 2–16 (a) of the specifications, such a denial is "final and binding upon the parties" when a contractor claims as here that work demanded is "outside the requirements of the contract." [1]

---

[1] "If the contractor considers any work demanded of him to be outside the requirements of the contract or if he considers any action or ruling of the contracting officer or of the inspectors to be unfair, the contractor shall without undue delay, upon such demand, action, or ruling, submit his protest thereto in writing to the contracting officer, stating clearly and in detail the basis of his objections. The

Notwithstanding the foregoing provision that the Secretary of War's decision is final and binding, respondent brought this action in the Court of Claims to recover the extra compensation. He there contended that his right to challenge such administrative findings was measured by Art. 15 of the contract, not by Par. 2–16 of the specifications. Article 15 makes a department head's decision "final and conclusive upon the parties" only when such disputes are over "questions of fact." [2] Respondent, alleging that the dispute here was over the proper "interpretation" of the contract, argues that how a contract shall be interpreted is not a "question of fact" but a "question of law." Adding this premise to his assumption that Art. 15 alone governed finality of this administrative decision, respondent contended that the Court of Claims could reconsider the facts, make new findings as a basis for its "interpretation," and then overturn the administrative decision. The Court of Claims did all three. On the basis of its new findings and "interpretation," the court entered a money judgment for respondent computed at 59.3 cents per cubic yard for the taxiway grading. 113 Ct. Cl. 159, 82 F. Supp. 1010.

---

contracting officer shall thereupon promptly investigate the complaint and furnish the contractor his decision, in writing, thereon. If the contractor is not satisfied with the decision of the contracting officer, he may, within thirty days, appeal in writing to the Secretary of War, whose decision or that of his duly authorized representative shall be final and binding upon the parties to the contract. . . ." Paragraph 2–16 of the specifications.

[2] *"Disputes.*—Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer subject to written appeal by the contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties thereto. In the meantime the contractor shall diligently proceed with the work as directed." Article 15 of the contract.

In petitioning for certiorari the Solicitor General represented that this decision plus previous ones of the Court of Claims had "weakened and narrowed the effectiveness of the well-established policy of the Government to settle, without expensive litigation, disputes arising under its contracts"; and that the total effect of the decisions was to "add further doubt and confusion to the authority of designated officers of the United States to make final decisions under government contracts." [3] We granted certiorari. 338 U. S. 810.

*First.* Contractual provisions such as these have long been used by the Government. No congressional enactment condemns their creation or enforcement. As early as 1878 this Court emphatically authorized enforcement of contractual provisions vesting final power in a District Quartermaster to fix distances, not clearly defined in the contract, on which payment for transportation was based. *Kihlberg* v. *United States,* 97 U. S. 398. Five years later *Sweeney* v. *United States,* 109 U. S. 618, upheld a government contract providing that payment for construction of a wall should not be made until an Army officer or other agent designated by the United States had certified after inspection that "it was in all respects as contracted for." And in *Martinsburg & Potomac R. Co.* v. *March,* 114 U. S. 549, this Court enforced a contract

---

[3] These and other representations in the petition for certiorari in this case are substantially identical with representations made by the Solicitor General in asking this Court to review a former Court of Claims judgment reported in 88 Ct. Cl. 284. The case there, it was urged, seemed to be the "culmination of a recent tendency in the Court of Claims to whittle away the authority of designated officers of the United States to make final decisions under contracts." It was insisted that "At least, we submit, the power of the Government to make effective contracts of this character should not be so circumscribed except by decision of this Court." We granted that petition and reversed the judgment without oral argument in a *per curiam* opinion. *United States* v. *McShain,* 308 U. S. 512.

for railroad grading which broadly provided that the railroad's chief engineer should in all cases "determine the quantity of the several kinds of work to be paid for under the contract, . . . decide every question which can or may arise relative to the execution of the contract, and 'his estimate shall be final and conclusive.' " *Id.* at pp. 551–552. In upholding the conclusions of the engineer the Court emphasized the duty of trial courts to recognize the right of parties to make and rely on such mutual agreements. Findings of such a contractually designated agent, even where employed by one of the parties, were held "conclusive, unless impeached on the ground of fraud, or such gross mistake as necessarily implied bad faith." *Id.* at p. 555.

The holdings of the foregoing cases have never been departed from by this Court. They stand for the principle that parties competent to make contracts are also competent to make such agreements. The Court of Claims departed from this established principle in *McShain* v. *United States*, 88 Ct. Cl. 284, where it refused to recognize as final the decision of a contracting officer, even though the Government and contractor had agreed that his decision should be final. The Court of Claims' holding was based on its conclusion that the contracting officer's decision had been reached by "interpretation of the contract, drawing, and specifications," and that parties were incompetent to make such decisions binding except as to questions of fact. Its holding was considered such a departure from established contract law that this Court summarily reversed in a *per curiam* opinion [4] citing only two of the many prior cases on the subject. One of the cited cases had enforced a contract provision that "the decision of the Supervising Architect as to the proper interpretation of the drawings and

---

[4] *United States* v. *McShain,* 308 U. S. 512.

specifications shall be final." *Merrill-Ruckgaber Co.* v. *United States,* 241 U. S. 387, 393.

Similar agreements have been held enforceable in almost every state. See cases collected in Note, 54 A. L. R. 1255 *et seq.* In one state, Indiana, the courts do seem to hold differently, on the ground that permitting engineers or other persons to make final determinations of contractual disputes would wrongfully deprive the parties of a right to have their controversies decided in courts. See cases collected in Note, 54 A. L. R. 1270–1271. In the *McShain* case we rejected a contention that this Court should adopt a rule like Indiana's and we reject it now. It is true that the intention of parties to submit their contractual disputes to final determination outside the courts should be made manifest by plain language. *Mercantile Trust Co.* v. *Hensey,* 205 U. S. 298, 309. But this does not mean that hostility to such provisions can justify blindness to a plain intent of parties to adopt this method for settlement of their disputes. Nor should such an agreement of parties be frustrated by judicial "interpretation" of contracts. If parties competent to decide for themselves are to be deprived of the privilege of making such anticipatory provisions for settlement of disputes, this deprivation should come from the legislative branch of government.

*Second.* We turn to the contract to determine whether the parties did show an intent to authorize final determinations by the Secretary of War or his representatives in this type of controversy. If the determination here is considered one of fact, Art. 15 of the contract clearly makes it binding. But while there is much to be said for the argument that the "interpretation" here presents a question of fact, we need not consider that argument. For a conclusion that the question here is one of law cannot remove the controversy from the ambit of Par. 2–16 of the specifications. That section expressly covers

all claims by a contractor who, like respondent here, "considers any work demanded of him to be outside the requirements of the contract . . . ." The parties incorporated it into the specifications and made the specifications part of the contract, all of which they had a legal right to do. The section is neither in conflict with nor limited by Art. 15, for the latter expressly excepts from its coverage such special methods of settlement "otherwise specifically provided in this contract."

The oft-repeated conclusion of the Court of Claims that questions of "interpretation" are not questions of fact is ample reason why the parties to the contract should provide for final determination of such disputes by a method wholly separate from the fact-limited provisions of Art. 15. To hold that the parties did not so "intend" would be a distortion of the interpretative process. The language of Par. 2–16 is clear. No ambiguities can be injected into it by supportable reasoning. It states in language as plain as draftsmen could use that findings of the Secretary of War in disputes of the type here involved shall be "final and binding." In reconsidering the questions decided by the designated agent of the parties, the Court of Claims was in error. Its judgment cannot stand.

*Reversed.*

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.