**UNITED STATES v. FOSTER TRANSFER CO.**

No. 12401.

United States Court of Appeals Ninth Circuit.

June 27, 1950.

J. Charles Dennis, U. S. Atty., Vaughn Evans, Asst. U. S. Atty., Seattle, Wash., for appellant.

Maxwell, Jones & Merritt, Seattle, Wash., for appellee.

Before BIGGS and STEPHENS, Circuit Judges and DRIVER, District Judge.

BIGGS, Circuit Judge.

On June 26, 1945 the United States of America through the Treasury Department entered into a contract with Foster Transfer Company, the plaintiff and appellee, whereby Foster agreed to furnish: "Drayage, packing and crating of supplies, equipment, furniture and household goods in Seattle, Washington, as may be required by the Procurement Division, U. S. Treasury Department, Seattle, Washington, and such other Government activities in the City of Seattle, as may desire to procure under this contract during the fiscal year beginning July 1, 1945 and ending June 30, 1946." The Twenty-First Article of the Special Conditions of the contract provided that: "The Government reserves the right to cancel the contract at any time for what may be deemed good and sufficient cause." Article 3 provided: "Disputes—Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer, subject to written appeal by the contractor within 30 days to the Secretary of the Treasury or his duly authorized representative whose decisions shall be final and conclusive upon the parties hereto."

Foster began performance under the contract on July 1, 1945 but that performance was not satisfactory. Twice during the next seven months conferences were held between representatives of the Treasury Department and Foster and letters were sent by the Treasury Department to Foster respecting the latter's failure to render satisfactory services. The Treasury Department on occasion threatened to cancel the contract if Foster did not do the work required of it in a proper manner. Finally on February 20, 1946 the Regional Director of the Procurement Division of the Treasury Department wrote a letter to Foster cancelling the contract pursuant to the provisions of Article 21. On March 8, 1946 Foster appealed to the Secretary of the Treasury as provided by Article 3 of the contract. On July 11, 1946 the Secretary rejected the appeal or sustained the cancellation effected by the letter of the Regional Director of February 20, 1946. The instant suit followed.

Foster sued the United States under the Tucker Act, c. 359, 24 Stat. 505, Title 28, § 41(20), U.S.C. (1946 ed.).[1] The complaint alleged that Foster "* * * fully and faithfully performed all things required of it" under the contract; that notwithstanding such performance the Treasury Department cancelled the contract "arbitrarily and without cause", and that by reason of the cancellation Foster was deprived of its profits for the unexpired portion of its contract. Foster sought to recover $5,000. The United States filed an answer denying the allegations of the complaint and also setting up the provisions of the contract, in particular those of Articles 21 and 3, and stating that the contract had been cancelled "for good and sufficient cause"; that an appeal had been taken by Foster to the Secretary of the Treasury which had been denied by the latter who

---

[1] The provisions of the Act are now distributed among the provisions of revised Title 28 United States Code Annotated. See 28 U.S.C.A. § 1346 and Table in front part of volumes of 28 U.S.C.A. There was no change of substance.

also affirmed the action of the Regional Director of the Procurement Division of the Treasury Department effecting the cancellation. The United States also alleged that Foster had not faithfully performed the contract in accordance with its terms.

Two issues were thus framed by the pleadings. The first was whether or not the Treasury Department had had good and sufficient cause to cancel the contract; the second, assuming *arguendo* that the answer to the first question would be in the negative, was what was the amount of the profits of which Foster had been deprived. The court below received testimony on these issues but during the course of the examination the learned trial judge inquired of Foster's president whether that corporation had committed itself to any expenses which could not be terminated within the time between the receipt of the notice of cancellation and the date on which the cancellation was to be effective. The witness listed items amounting to approximately $1,675. There was no objection to this testimony by the United States.

At the close of the trial the court below rendered an oral opinion and thereafter filed findings of fact and a conclusion of law. The court found that Foster had not faithfully performed the services required of it under the contract and that the Treasury Department had had just cause for cancelling the agreement. The court concluded, however, that the cancellation was "unreasonable under the circumstances in that it did not extend sufficient time to plaintiff to protect itself against certain fixed expenses necessarily incurred to enable it to perform its contract with the defendant." Judgment was thereupon entered for the plaintiff in the sum of $1,500. No motion for a new trial was made by the United States which has appealed.

■ We should state that in our opinion the first issue framed by the pleadings, and one to which much of the testimony was directed, viz., whether the Treasury Department had good and sufficient cause to cancel the contract, could not be properly brought before the court. In United States v. Moorman, 338 U.S. 457, 460–461, 70 S.Ct. 288, 290, the Supreme Court, cit-

ing Martinsburg & Potomac R. Co. v. March, 114 U.S. 549, 551–552, 555, 5 S.Ct. 1035, 29 L.Ed. 255, emphasized the duty of trial courts to recognize the rights of the parties to make and rely on such mutual agreements as those included in Articles 3 and 21 of the contract in the instant case, and pointed out that a determination of all questions arising under the contract by the person designated therein to make such determinations shall be "' conclusive, unless impeached on the ground of fraud, or such gross mistake as necessarily implied bad faith.'" Plumley v. United States, 226 U.S. 545, 33 S.Ct. 139, 57 L.Ed. 342; Merrill-Ruckgaber Co. v. United States, 241 U.S. 387, 36 S.Ct. 662, 60 L.Ed. 1058. See also the *per curiam* reversal of the Court of Claims in United States v. John McShain, Inc., 308 U.S. 512, 520, 60 S.Ct. 134, 84 L.Ed. 437. The authorities just cited dealt with decisions of the Court of Claims but the analogy between the function of a United States district court acting under the Tucker Act and those of the Court of Claims in adjudicating claims is apparent.

In the instant case the Treasury Department had the right "to cancel the contract at any time for what may be deemed to be just and sufficient cause." Article 21. Decision of a controversy arising under the contract, including whether or not it was cancelled for good and sufficient reason was expressly confided to the Secretary of the Treasury. Article 3. The Secretary determined that the cancellation was effected for just and sufficient cause and gave as a reason unsatisfactory performance by Foster. The complaint did not allege fraud or gross mistake in effecting the cancellation. Though it is alleged that the Treasury Department "arbitrarily and without cause" cancelled the contract, such an allegation cannot be deemed to be an assertion of fraud or gross mistake. The testimony clearly would not support allegations of fraud or gross mistake even if made. The evidence demonstrated that the Treasury Department had good and sufficient cause to cancel the contract and the action of the Secretary of the Treasury in affirming the cancellation was correct. It follows that the issue of performance could not properly be brought before the

court below. However, since that court decided that the Treasury Department had good cause to cancel the contract no harm was done to the United States by permitting the issue indicated to be tried, and though the receipt of evidence as to performance was a futility neither side was endamaged thereby.

In support of the judgment Foster asserts, as is the case, that the contract has no term and therefore, if it was to be terminated reasonable notice had to be given. This principle is well established, 12 Am.Jur., Contracts, Section 305, and we do not quarrel with it. But the doctrine is not pertinent where the contract, as here, contains language providing for termination "at any time" for unsatisfactory performance. No ambiguity exists in Article 3 or is created by it. The Treasury Department was not required to give any advance notice of the termination of the contract. Such was the agreement of the parties. Though it was not necessary, the Regional Director's letter gave at least seven days notice.

Quite aside from the foregoing, however, we do not perceive how one who is clearly in breach of his contract may claim damages, special, consequential, or otherwise, unless some special term of the instrument authorizes such recovery. None is cited to us here and we can find no provision which could justify such a result.

The judgment is reversed and the cause is remanded with the direction to the court below to enter judgment in favor of the United States.