**EVANS et al. v. UNITED STATES.**

No. 5904.

United States District Court E. D. Missouri, E. D.

Nov. 26, 1951.

Don O. Russell, and Tyree C. Derrick, St. Louis, Mo., for plaintiffs.

Drake Watson, U. S. Atty., Wm. V. O'Donnell, Asst. U. S. Atty., St. Louis, Mo., for defendant.

HARPER, District Judge.

This is a suit under the War Contract Hardship Claims Act, properly known as the Lucas Act, Public Law 657, 79th Congress, Second Session, Chapter 864, Paragraphs 1–6, 60 Stat. 902, 41 U.S.C.A. § 106 note.

Plaintiffs seek to recover the loss they sustained in the part performance of a contract with the defendant, entered into on August 28, 1942, for the construction of a sewerage disposal plant at an Internment Camp at Weingarten, Missouri. The Lucas Act contemplates relief by grace and not in recognition of legal rights. It limits claims upon which relief may be granted to those which had been presented on or before August 14, 1945, to the department or agency concerned, and applied to work, supplies or services furnished between September 16, 1940, and August 14, 1945, under a contract with the Government. The contract in question fell within the purview of the Lucas Act if a claim had been properly and timely presented.

Since the passage of the Lucas Act there have been many contentions as to what constituted the proper presentation of a claim prior to August 14, 1945. The Supreme Court in Fogarty, Trustee in Bankruptcy v. U. S., 340 U.S. 8, 71 S.Ct. 5, 95 L. Ed. 10, a recent case, lays down the rule to be applied with respect to whether or not a claim had been presented within the purview of the Lucas Act. The Supreme Court in the Fogarty Case, 340 U.S. loc. cit. 13, 71 S.Ct. loc. cit. 8, said: "In the light of the foregoing considerations and the relation of the Lucas Act to the First War Powers Act, we think Congress intended the term 'written request for relief' to mean written notice presented prior to August 14, 1945, to an agency which was authorized to grant relief under § 201 of the First War Powers Act. Since there is no definition of the term in the Act or regulations, and since the legislative history of the Act does not show that any settled usage of the term was brought to the attention of Congress, no particular form of notice is required. *But whatever the form of notice, it must be sufficient to apprize the agency that it was being asked to grant extra-legal relief under the First War Powers Act for losses sustained in the performance of war contracts.*" (Emphasis mine.)

The plaintiffs claim that notice was given to the Government before August 14, 1945, as required by the Lucas Act, and rely on plaintiffs' Exhibits 2 to 10, inclusive, for such notice. Plaintiffs' Exhibits 4 and 6 are the ones most favorable to the plaintiffs, but upon examination of these exhibits there is no indication that the plaintiffs are seeking relief under the First War Powers Act 50 U.S.C.A.Appendix, § 601 et seq., for losses sustained in the performance of war contracts. Exhibit 4 does not indicate that the plaintiffs were seeking relief under the First War Powers Act, but rather were seeking relief and payment as a matter of right, the chief complaints being the amounts allowed for extras because of unusual excavating conditions, certain labor scale payments, and the exorbitant price allowed E. J. Fisher to complete the job after default. Exhibit 6 is a request to renegotiate the contract, a right which was accorded in certain instances under Section 403 of the Sixth Supplemental National Appropriation Act of 1942, as amended gen-

erally, and was generally referred to as the Renegotiation Act, 50 U.S.C.A.Appendix, § 1191. The defendant as set out in Exhibit 10 so interpreted Exhibit 6 and the interpretation is proper.

The plaintiffs had not prior to August 14, 1945, presented their written request for relief under the First War Powers Act to the department or agency concerned, and are not entitled to relief under the Lucas Act.

The Judgment on plaintiff's cause of action will accordingly be in favor of the defendant and against the plaintiffs.

■ The defendant in its counterclaim seeks to recover $11,933.72 from the plaintiffs as a result of the plaintiffs' defaulting in the contract for the construction of the sewerage disposal plant at the Internment Camp at Weingarten, Missouri. The contract between the plaintiffs and the defendant called for the construction of said plant at a cost of $94,376.75. Certain extras were added in the construction of the sewerage plant by change orders, making the total amount which the Government was obligated to pay for the construction of the said sewerage plant $104,878.23. Before the plaintiffs defaulted in their contract they were paid by the defendant $54,404.46 and were indebted to the Government for $5,977.50, or a total of $60,377.96, leaving a total of $44,500.27 with which to complete the contract. In addition, the plaintiffs left materials which it is admitted were worth $2,540 which were turned over to the Government, and were entitled to the further sum of $284 for certain concrete work with respect to items as set out in Defendant's Exhibit I, making a total of $47,324.27, from which should be deducted the sum of $10.40, due to the difference in Change Order #4, or a total of $47,313.87 which the defendant had available with which to complete the contract. After the default of the contract the defendant let a contract to complete the sewerage disposal plant which had been started by the plaintiffs to E. J. Fisher for $47,896, or $582.13 above the amount of money which was available to finish the contract. The Government further contends that it is entitled in addition to the $582.13 the sum of $11,351.59 for equipment and materials furnished by the Government to complete the contract.

An examination of Defendant's Exhibit L-2, which is the contract between the defendant and E. J. Fisher for the completion of the job, discloses that the Government was required to furnish some materials and equipment. Page 54 of Defendant's Exhibit J lists the equipment that the Government furnished, the cost of which was $11,351.59.

There has never been any serious dispute between the parties with respect to the furnishing of this material and equipment, inasmuch as the material and equipment was ordered by the plaintiffs before they defaulted on the contract and the Government went ahead and accepted delivery and paid for the same and furnished it to the contractor Fisher with which to complete the contract. There was before the plaintiffs defaulted in the contract, and has been since that time, considerable dispute over the amounts that the defendant allowed for extras with respect to the construction of the sewerage plant. The contract between the plaintiffs and defendant, Plaintiffs' Exhibit 1, discloses that the contract specifically sets out the manner in which the price to be paid for the extras should be arrived at. The method provided for by the contract was used in arriving at the figure for extras.

The Supreme Court of the United States, in the case of United States v. Moorman, 338 U.S. 457, 70 S.Ct. 288, 94 L.Ed. 256 based on a contract quite similar to the one in question, held that the terms of the contract were binding and figures so arrived at are binding on the parties to the contract.

Judgment will be rendered for the defendant on its counterclaim in the amount of $11,933.72.

Attorneys for defendant will accordingly prepare the Findings of Fact, Conclusions of Law and Judgment to be entered by the court.