**GEORGE J. GRANT CONST. CO. et al.
v. UNITED STATES.**

No. 46890.

United States Court of Claims.

Jan. 13, 1953.

J. Roy Thompson, Jr., Washington, D. C., M. Walton Hendry and Bernard J. Gallagher, Washington, D. C., were on the briefs, for plaintiffs.

Frank J. Keating, Washington, D. C., with whom was Holmes Baldridge, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge.

The plaintiffs, as joint venturers, made a contract with the Government to construct for it three hemp mills at three separate places in Minnesota. The contract price was a lump sum of $301,800, plus unit prices to be paid for work not included in the base bid. The contract was executed on behalf of the Government through the Commodity Credit Corporation, acting on behalf of the Defense Plant Corporation. Both were agencies of the Government.

The contract was dated May 15, 1943. It provided that work should commence 7 days after the date of the contract, and be completed within 160 calendar days after that date.

The completion date stipulated in the contract was, therefore, October 22, 1943. There was no provision in the contract for the assessment of liquidated damages, and the Government has made no claim against the plaintiffs on account of the late completion. The plaintiffs are here suing the Government because, they allege, it, by its conduct, caused them to be delayed in the completion of the contract, and thereby damaged. They also assert some other claims which will be separately discussed.

Our findings of fact recite the actions and omissions of the Government's agents which, the plaintiffs assert, caused them damaging delays. They consist of failures to furnish plot plans, grades, and locations promptly, of delays in approving shop drawings and in making decisions about change orders and the acceptance of the plaintiffs' offers for work changed by such orders.

The contract specifications contained the following provision:

"Article 12. Materials Furnished by Owner or Agent.

"No materials, supplies, equipment, labor, services or any other things

required for the performance of the work hereunder are to be furnished by the Owner or Agent, unless the specifications otherwise expressly provide. In case the specifications expressly provide that any materials, supplies, equipment, labor, services or any other things shall be furnished by the Owner or Agent, the Owner or Agent, as the case may be, shall use reasonable efforts to furnish the same when required by the Contractor, but neither the Owner nor the Agent shall be responsible for any delay in the furnishing thereof."

We think that this article was intended to relieve the Government from all liability for delays caused by it, at least in the absence of fraudulent or malicious or arbitrary conduct of its agents causing the delays complained of. The language of the article is very broad. It speaks of "materials, supplies, equipment, labor, services, or any other things" to be furnished by the Government. The delays complained of related to matters that were covered by one or more of these words. Although the provision is harsh, we are not at liberty to narrow the construction of it in order to alleviate its harshness. See United States v. Moorman, 338 U.S. 457, 70 S.Ct. 288, 94 L.Ed. 256; United States v. Wunderlich, 342 U.S. 98, 72 S.Ct. 154.

What we have said disposes of the plaintiff's claims which are grounded upon delays allegedly caused by the Government. We have, however, also considered the claims as if Article 12 were not present in the contract, and on that basis also our conclusion is adverse to the plaintiffs.

As we have said, the original contract completion date was October 22, 1943. The plaintiffs were advised on July 27, 1944, that the three mills were accepted. The plaintiffs claim that the entire period from the former to the latter date was a period of delay caused by the Government, for which they should be paid for their job and main office overhead, travel, equipment rental, and utility expenditures.

Our consideration of the evidence persuades us that there were some instances in which the Government's slowness in approving drawings, and making up its mind about whether change orders should be given and whether the plaintiffs' offers for the changed work should be accepted, may have caused some delay in the progress of the work as a whole. But we are also persuaded that other factors for which the Government was not responsible, were the causes of substantial delays. These other factors were abnormal rainfall in the early months of the work, and again at the end; a severe snowfall, making outdoor work impossible for a considerable period; shortages of materials and labor; slowness of the plaintiffs' plumbing and heating subcontractor in doing his work; delays caused by change orders which were permissible under the contract, even assuming that other change orders, because the total number was excessive, were not permissible causes of delay; and the plaintiffs' slowness in correcting deficiencies pointed out in check lists, so that final inspection and acceptance could take place.

The plaintiffs have not given evidence from which we might determine, even approximately, how many days of damaging delay to the project are supposed to have resulted from any specific delaying conduct on the part of the Government. They tell us only the completion date as computed under the original contract, and the date of final acceptance. In this state of the evidence, we cannot determine as a fact that the work was wrongfully delayed by the Government, and if we could so determine, we would still not have the remotest notion of how much it was so delayed. If, therefore, Article 12 of the specifications had not been in the contract, our conclusions would still be that the plaintiffs could not recover for the alleged delays upon which they rely.

The plaintiffs assert three other claims, not relating to delays. The first of these is a claim for an extra of $41.70 for a work bench at each of the three mills, a total of $125.10. Our finding 31 shows that

in our opinion, the work benches which the plaintiffs were required to build were no more costly than the plaintiffs should have expected to have to build at the time they entered into the contract, and before they were furnished detailed drawings of the benches.

■ The second claim not related to delays is for the cost of procuring the cutting of "key seats" in certain shafting at each of the three mills. The Government was required by the contract to furnish the shafting for the transmission of power in the mills. The key seats were slots in the shafting into which square or other rectangular metal keys would be placed, fitting not only into the slots in the shafting but also into matching slots in the pulleys, thus preventing the pulleys from turning on the shafts. The Government's architect-engineer approved a change order which would have given the plaintiffs compensation for having the key seats cut, but the change order was not approved by the contracting authority, and was not issued, and the plaintiffs therefore were not paid. Article 3 of the specifications, quoted in Finding 33, provides that if the parties fail to agree upon the adjustment in compensation owing to a contractor as a result of a change in the work, the dispute should be settled by arbitration, as provided in article 31 of the specifications, which is quoted in our Finding 34. The plaintiffs say that the provision for arbitration is void, citing United States v. Ames, 24 Fed.Cas. page 784, No. 14441; Welch, Assignee of McCormick, v. United States, 1 C.Cls.Rep. 1859–60, No. 199, p. 39; 33 Op.Atty.Gen. 160. We think, however, that the numerous Supreme court decisions, the latest of which are United States v. Moorman, and United States v. Wunderlich, both cited above, approving the provisions of Article 15 of the standard form of government contract, show that the plaintiffs are wrong. That article provides that, in case of dispute, the decision should be made by the contracting officer, subject to the contractor's right to appeal to the head of the department, whose decision should be final. That is a sort of arbitration, albeit by agents of one party to the contract. Yet it violates, as completely as arbitration by third persons, as provided for in the instant contract, would violate, any doctrine that Congress has consented to have decisions made against the Government only in the Court of Claims. We think, therefore, that the plaintiffs, feeling aggrieved by the refusal to give them extra compensation for having the key seats cut, were required to ask for arbitration of the grievance, which the contract permitted them to do, and that they are not entitled to have it adjudicated here.

Finding 35 shows that two change orders, Nos. 62 and 63, which would have given the plaintiffs additional compensation for work done under winter conditions, were recommended by the architect-engineer, and approved by the Commodity Credit Corporation, but were denied approval by the Defense Plant Corporation and were therefore never issued to the plaintiffs. While the Commodity Credit Corporation, as agent of the Defense Plant Corporation, the owner, might, perhaps, have effectively issued the change orders without submitting them to its principal for approval, it did not do so. If an agent, instead of exercising his power to bind his principal, refers the problem to his principal with a recommendation, it is the principal's decision, and not the agent's recommendation, which is effective. For the reason given above in connection with the cutting of the key seats, as well as for the reasons given in our discussion of the problem of delays allegedly caused by the Government, the plaintiffs are not entitled to recover on these items.

The plaintiffs' petition will be dismissed.

It is so ordered.

HOWELL, WHITAKER, and LITTLETON, Judges, concur.

JONES, Chief Judge, took no part in the consideration and decision of this case.