**UNITED STATES of America,**
**Appellant,**

v.

**Norris LOONEY, Doing Business as the**
**Norris Looney Company, Appellee.**

**No. 14265.**

United States Court of Appeals
Ninth Circuit.

Sept. 30, 1955.

C. E. Luckey, U. S. Atty., James W. Morrell, Asst. U. S. Atty., Doris Rae Keeler, Portland, Or., for appellant.

Latourette & Latourette, Henry A. Buehner, Portland, Or., for appellee.

Before HEALY, HASTIE and LEMMON, Circuit Judges.

HASTIE, Circuit Judge.

This litigation arises out of a construction contract between Norris Looney and the United States, pursuant to which Looney has constructed a building to serve as a microwave station on Squak Mountain in the State of Washington. Suing in the District Court under the Tucker Act, 28 U.S.C. § 1346(a) (2), Looney successfully claimed that, in addition to the contract price for the job, as to which there is no present controversy, he is entitled to damages for added expense incurred in his performance as a result of an alleged breach of warranty by the United States. The government has appealed.

The contractor has attributed the extra cost in question to the non-availability of a certain road as a means of access to the building site and the consequent necessity of moving men and materials over a more difficult and circuitous route. The following references to the matter of access to the building site appear in the specifications which are part of the contract:

"1–102. Access Road. A new three and one-half (3½) mile county road from the south side of the mountain to King County Radio Station and the adjacent BPA Microwave Radio Station site is under construction and it is estimated that it will be completed by the last week in November. The maximum grade is 15 per cent and the road will be built with an adequate minimum radius of curvature. The road will be gravel surfaced. This access road will be available to the contractor after completion during the life of this contract.

\* \* \* \* \*

"2–101. Commencement, Prosecution, and Completion. The contractor shall commence work under the contract within ten (10) calendar days after date of receipt of notice to proceed and shall prosecute the work with such faithfulness and energy as to have the work completed within sixty (60) calendar days after date of receipt of notice to proceed. Provided, that the contractor will be allowed not less than 45 days for completion after the day that the new county road to the summit is first made available for public use."

After the contract was signed and before the work was started, it became apparent that the road mentioned in the specifications would not be completed in time for use on this job. Accordingly, the government provided and the contractor used another less satisfactory approach. It is this change which is said to have made performance more expensive.

At the conclusion of the job Looney submitted to the government contracting officer a claim for this added expense. The contracting officer denied the claim, finding, among other things, that the above-quoted language of the contract was not to be construed as a warranty that the specified road would be available.

In these circumstances we must determine the significance and legal effect of this finding and ruling by the contracting officer. The contract contains the following provisions:

"Part III—General Technical Provisions

\* \* \* \* \*

"3–103. Intent of Plans and Specifications. \* \* \*

"C. Interpretation of Specifications. On all questions relating to the acceptability of material or machinery, classification of materials, the proper execution of the work, and the interpretation of these specifications, the decision of the contracting officer, or his duly authorized representatives, shall be final."

The precise question we have to decide is whether the contracting officer's construction of Sections 1–102, and 2–101 amounted to an "interpretation of the specifications" within the meaning of Section 3–103,C.

The significance of the language of Sections 1–102 and 2–101, whether promise or condition, is debatable. It is arguable that the provision concerning the completion and availability of the county road was intended to state no more than a condition qualifying the obligation of the builder, so that the unavailability of the road could serve only as an excuse to the builder for nonperformance or for delay in completing the job. On the other hand, this language can be interpreted as promissory, constituting a warranty by the government that the road would be provided and making the government affirmatively liable in damages for any breach of that alleged undertaking. Accordingly, there is need to construe and interpret the agreement in the light of all relevant circumstances to determine whether the language used is reasonably to be read as a promise by the government as well as a condition limiting the contractor's obligation. When the contracting officer decided this question in disposing of the builder's claim for ad-

ditional compensation, we think he was making a controlling interpretation of specifications as contemplated by Section 3–103,C.

An instructive parallel is afforded by United States v. Moorman, 1950, 338 U. S. 457, 70 S.Ct. 288, 94 L.Ed. 256. There the issue was whether a contractor had undertaken to grade a taxiway which appeared on the drawings but was outside of the area described in the specifications. The Supreme Court analyzed this dispute as one over the "interpretation" of the contract. We think the present dispute belongs in the same category.

■ The contractor seeks to avoid this conclusion by pointing out that Part III of the contract in which Section 3–103 appears is entitled "General Technical Provisions." From this entitlement it is argued that the only issues of interpretation upon which the contracting officer is authorized to rule are questions which are technical in an engineering sense. However, we think the critical phrase "interpretation of specifications" as it appears in Section 3–103,C is not to be read so restrictively. Indeed, a reading of Part III of the contract in its entirety makes it too obvious to require particular reference that many matters broader than engineering technicalities are explicitly covered by that title.

■ The sum of the matter is this. The parties agreed that the contracting officer should have final say on the interpretation of the specifications. Here he has resolved a dispute against the contractor by interpreting language of the specifications as constituting a condition rather than a warranty. The question was a doubtful one and the ruling was not arbitrary. The contracting officer's ruling must, therefore, be accepted by the parties because they agreed to this method of settling such disputes. "If we may concede to  *  *  *  [the con-tractor] an ambiguity in the specifications  *  *  *  at the utmost it could only be said that there was ground for dispute, and, under the contract, the decision of the  *  *  *  [contracting officer] upon the dispute was final." See Merrill-Ruckgaber Co. v. United States, 1916, 241 U.S. 387, 393, 36 S.Ct. 662, 665, 60 L.Ed. 1058. Cf. United States v. John McShain, Inc., 1939, 308 U.S. 512, 60 S.Ct. 134, 84 L.Ed. 437, reversing per curiam, 88 Ct.Cl. 284. See also United States v. Moorman, supra, 338 U.S. 461–462, 70 S.Ct. 290–291.

This analysis is not in derogation of this court's decision in United States v. Johnson, 9 Cir., 1946, 153 F.2d 846, upon which the court below and the appellee have relied. The Johnson case involved a controversy similar to the present one in that it was a dispute whether certain language of a government contract constituted a warranty by the United States. However, on the question whether the parties had made the matter one for binding decision by the contracting officer, the only provision of the contract urged as relevant was one stipulating that the contracting officer should finally decide all disputes " 'concerning questions of fact.' " p. 849. This court ruled that the dispute whether language constituted a warranty was not one of fact and hence not conclusively decided by the officer. At the same time, Judge HEALY, speaking for the court, was careful to note that different language defining the authority of the contracting officer over disputes might require a different result, citing United States v. Blair, 1944, 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039. In the present case, different from Johnson, the government relies upon a contractual provision which makes the contracting officer's interpretation of the specifications final. That agreement controls this controversy.

The judgment of the District Court is reversed.