UNITED STATES of America, for use and benefit of CONSTRUCTION PRODUCTS CORP., Appellant and Cross-Appellee,

v.

BRUCE CONSTRUCTION CORPORATION et al., Appellees and Cross-Appellants.

BRUCE CONSTRUCTION CORPORATION et al., Appellants and Cross-Appellees,

v.

UNITED STATES of America, for use and benefit of CONSTRUCTION PRODUCTS CORP., Appellee and Cross-Appellant.

No. 17689.

United States Court of Appeals
Fifth Circuit.

Nov. 30, 1959.

Marion E. Sibley, Thomas Barkdull, Jr., Sibley, Grusmark, Barkdull & King, Miami Beach, Fla., for appellant and cross-appellee.

Joseph F. Jennings, H. Reid DeJarnette, Dixon, DeJarnette, Bradford, Williams, McKay & Kimbrell, Miami, Fla., for Bruce Const. Corp., et al., appellees cross-appellants.

Before RIVES, Chief Judge, and TUTTLE and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

In this Miller Act, 40 U.S.C.A. §§ 270a–270e, suit Construction Products Corp. (Construction), a subcontractor, and Bruce Construction Corporation (Bruce), the prime contractor, asserted claims and cross claims growing out of the building of the Veterans Administration Hospital at Lake City, Florida. Each appeals from a judgment entered after a nonjury trial allowing and denying in part their respective claims.

The case as it comes to us has very narrow compass. To the extent that matters are factual, not legal, the Court's findings readily withstand scrutiny under the clearly erroneous concept of F.R.Civ. P. 52(a), 28 U.S.C.A. The heart of the controversy is whether, in the asserted charge-backs by Bruce against Construction allowed by the District Court, Bruce, the prime contractor, complied with the notice requirements of the contract.

The disputed charge-backs allowed by the District Court and of which Construction here complains fall in three groups: (1) those itemized in paragraph 6 of the Court's findings totaling $4,622.34 plus 15% administrative overhead (in the amount of $668.28 covered in paragraph 7) making a total of $5,290.62; (2) for replacement of 78 doors as required by the Veterans Administration totaling $6,007.49; and (3) for replacement by the Veterans Administration of defective sash springs totaling $2,728.05. These charge-back credits aggregate $14,026.16.

The basic theory of Construction, which we accept for the purposes of this appeal, is that the subcontract between it and Bruce embraced the guaranty provisions of the prime contract between the Veterans Administration and Bruce. Construction then asserts that these provisions were not complied with by Bruce. The prime contract prescribed that with respect to guaranteed work, the Contractor, on notice from the Contracting Officer, was obligated to place in satisfactory condition the guaranteed work and make good all consequential damage; and upon the Contractor's failure to so

proceed, the Contracting Officer might either (1) do or have the work done by others at the Contractor's expense or (2) accept the unsatisfactory work and charge the Contractor what would have been expended to put the work in proper condition.[1]

■ Of course, incorporation of the prime contract into the subcontract cuts both ways. Its obvious purpose commits the subcontractor, as well as the prime contractor, to the typical government clause giving finality to the Contracting Officer's decisions on contract performance, compliance or breach.[2] United States v. Moorman, 1950, 338 U.S. 457, 70 S.Ct. 288, 94 L.Ed. 256; United States v. Wunderlich, 1951, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113; 41 U.S.C.A. §§ 321, 322.

■ With respect to Group (1), no real problem arises. The Court on ample evidence found that these items, all listed on a sheet which was the subject of an extended conference in August 1955, were essentially agreed to by both parties at that time. The subsidiary items were in controversy in the conference and if,

---

1. "Section G  *  *  *

"5. Guaranty:

"*  *  *  Whenever work is required ° to be guaranteed, the contractor whenever notified by the Contracting Officer, must immediately (1) place in satisfactory condition in every particular any of the guaranteed work, and (2) make good all damage to the buildings and grounds, or the equipment or contents thereof if such unsatisfactory condition or damage develops within the period stipulated by the guaranty and is due to the use of materials or workmanship which are inferior, defective, or not in accordance with this contract, and must make good any work or materials, or the equipment and contents of said buildings or grounds, which are disturbed in fulfilling the requirements of this contract or of any guaranty embraced in or required hereby. *  *  *  Upon the contractor's failure so to proceed promptly to comply with the terms of any guaranty under this contract or still running upon work originally executed by other contractors, the Contracting Officer may (1) either have such work performed as he deems necessary to fulfill such guaran-

ties, or (2) allow such damaged or defective work  *  *  *  to remain in such unsatisfactory condition: Provided, That in either event the contractor shall promptly pay the United States such sums as were (in the first instance) expended so as to fulfill such guaranty or as it would have been (in the second instance) necessary to expend to fulfill such guaranty. All guaranties under this contract shall run from the date the work is completed, as established by the Government. *  *  *  Everything done in fulfillment of any guaranty shall be without additional expense to the United States. *  *  *  "

2. The contract, Section G, paragraph 5 Guaranty, note 1, supra, goes on to provide:

"The opinion of the Contracting Officer as to the liability of this contractor under any such guaranty or as to the satisfactory fulfillment or compensation for the non-fulfillment thereof will be final, subject to written appeal by the contractor, within thirty (30) days, to the Administrator, whose decision will be final and conclusive upon the parties hereto."

as found by the Court on disputed testimony, there was this agreement, there was then more than adequate evidence to support the implicit conclusion that if the contract guaranty terms had not been literally complied with, there was either substantial compliance or an intelligent waiver. Indeed, as to most, there was, we think, a literal compliance. For example, included within the total of $4,622.34 were substantial amounts for repainting of sashes and the installation of certain partitions about which there was overwhelming evidence, much of it in writing, notifying Construction of the defects, the necessity for corrective action, and the intention to hold Construction accountable.

■ Concerning Group (2) for replacement of 78 defective doors, the record is equally overwhelming that the Veterans Administration, to Construction's immediate knowledge, complained extensively about noncompliance of the doors with the contract specifications, and that the doors failed to comply with the overall warp allowance after hanging. Whether the guaranty provision contemplates written or oral notice is unimportant. Construction had both. So serious, indeed, was the complaint of the Veterans Administration that a general conference between executive representatives of Bruce, Construction, the Veterans Administration, the manufacturer of the doors and its Florida distributor, was convoked in Washington in 1956. And in 1957 Bruce notified Construction in writing together with the transmission of some reports from the Veterans Administration that the Administration was contending that the doors would have to be replaced, and that Construction should take the necessary steps. Construction was so concerned over this that the local Florida distributor of the doors and the Louisiana manufacturer were each notified and representatives of all three of them made an on-the-spot inspection at the Hospital.

■ It is true that according to them, the inspection was unsatisfactory and inadequate due to bureaucratic interference by the medical director of the Hospital and in fact the doors were not, in their judgment, faulty. But the Court on disputed, but adequate, evidence found the doors in fact defective. And in any case this was a determination left to the Contracting Officer whose decision has not yet been overruled by an administrative appeal. United States v. Moorman, supra; United States v. Wunderlich, supra.[3]

■■ The matter is not quite so clear as to Group (3) for reinstallation of sash springs. But if it is assumed that the guaranty, note 1, requires *written* notice, the record shows at least one letter of March 27, 1956 (plaintiff's exhibit 19) from Construction to Bruce acknowledging one from Bruce "dated March 23, 1956 which asked us to take care of the spring tension balances which are broken or pulled loose from their fastenings." Construction contended it had a liability only to replace (not install) defective ones and, of course, this letter to Bruce was not an admission, or considered as such, of liability. It was sufficient, together with other evidence, however, to satisfy any *notice* requirement, leaving legal liability for the item to be ultimately determined. On that there can be no dispute since the subcontract clearly called for Construction to furnish all such frames, sash, spring-balances with the windows "to be delivered * * * all set up and glazed." Since the sash springs were determined to be defective by the Contracting Officer and had to be replaced after installation, the contract imposed on Construction the consequential damages. The notice requirement having been satisfied, and the deficiency being one within the guaranty, Construc-

---

3. Remaining undetermined as of the date of the submission of this case was Bruce's administrative appeal from the Contracting Officer's decision covering the replacement of the 78 doors and perhaps other specific items involved in these backcharges.

tion must pay not what was originally expended for installation when the windows were not in place, but the amounts spent by the Veterans Administration and characterized as reasonable by competent witnesses.

■ The cross appeals of Bruce and that of its surety take little comment. Bruce in counterclaims sought damages for delay for approximately 50 days occasioned by breaches by Construction principally for furnishing sash frames which failed to comply with specifications, as well as other specified breaches. The Court struck the testimony both as to estimates of time and dollar loss, but received the proffer which appears in the record. Perhaps it might have been the better practice for the Court to have heard it and then rejected it for want of *weight*, but the result is the same.

Executives of Bruce testifying as witnesses on this point acknowledged it to be elusive and vague in nature with no way of telling with any reliability how much completion of the whole contract was really delayed through these breaches. They were equally candid as to the dollar loss which they never attempted to justify except in an averaged daily overhead figure. The testimony in this shape was insufficient on which to base a finding either of delay in point of time or loss in terms of dollars.

■■ The surety's appeal is likewise of little merit. The taking by Construction of the promissory note in the amount of $25,000 (renewing an earlier one for $20,000) from Bruce did not, without proof of injury, release the surety. United States Fidelity & Guaranty Co. v. United States, 1903, 191 U.S. 416, 24 S. Ct. 142, 48 L.Ed. 242. The objection that the suit was not timely under the one-year limitation of 40 U.S.C.A. § 270b(b)

is completely without merit. The settlement of the contract was on September 30, 1955. The complaint by Construction was filed November 28, 1955. The fact that the $25,000 promissory note was not brought formally into the case by specific recital in a pleading until after the elapse of the year is of no consequence.

It follows that the judgment appealed from was correct and is affirmed and the cause remanded.[4]

Affirmed.

---

4. To the extent that Bruce's administrative appeal from the Contracting Officer's determination has put in issue any one or more or all of the precise items allowed by the District Court as charges-back in groups (1), (2) and (3), affirmed herein, Bruce is a Trustee as to any recoveries or allowances directly

made by the final decision in the administrative appeal. Such recoveries or allowances will be held and treated by Bruce as Trustee for the use and benefit of Construction. This shall not, however, suspend or affect the finality of the judgment herein affirmed.